UNITED STATES of America, Plaintiff,

v.

ONE 1978 CHRYSLER LE BARON STATION WAGON VIN # GH45D8G278912, Defendant.

No. 79 CV 58.

United States District Court, E.D. New York.

July 11, 1986.

Robert Begleiter, Chief, Civ. Div. U.S. Atty.'s. Office, Brooklyn, N.Y., for plaintiff.

Rocco Scalone, New York City, for defendant.

## ORDER

McLAUGHLIN, District Judge.

It appearing that no objections have been filed, the attached Report and Recommendation of United States Magistrate John L. Caden is hereby adopted as the Opinion of the Court. Accordingly, the government's motion for summary judgment is granted.

SO ORDERED.

## REPORT AND RECOMMENDATION

March 18, 1985

JOHN L. CADEN, United States Magistrate.

## INTRODUCTION

The United States commenced this action on January 8, 1979, pursuant to 21 U.S.C. § 881(a)(4) and 49 U.S.C.A. § 782, seeking forfeiture of one 1978 Chrysler LeBaron station wagon, owned by Ring-A-Round The Collar Laundermat, Inc., the sole claimant. It is undisputed that the defendant vehicle was used to facilitate the transportation, sale, receipt, possession or concealment of cocaine by criminal defendants who have been convicted of both conspiracy to possess with intent to distribute cocaine (21 U.S.C. §§ 841(a)(1), 846) and possession with the intent to distribute cocaine (18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1)). *See, United States v. Robert Masucci and Robert Delligatte,* 78 CR 553.

Plaintiff submitted a motion for summary judgment to the Honorable Joseph M. McLaughlin which was denied in a memo-

randum and order dated November 28, 1981, on the grounds that there were genuine issues of material fact to be resolved regarding the lawfulness of the possession and acquisition of the defendant vehicle by Robert Masucci on the night of the illegal narcotics transaction. *See United States v. One 1978 Chrysler LeBaron Station Wagon*, 531 F.Supp. 32 (E.D.N.Y.1981).

Subsequent to the aforementioned order, Ralph Masucci, President of claimant, was deposed on June 9, 1982. Plaintiff now renews its motion for summary judgment, based on the deposition testimony of Ralph Masucci, and requests that a final order granting forfeiture be issued.[1]

## DEPOSITION TESTIMONY

The deposition testimony reveals the following Claimant, Ring-A-Round The Collar Laundermat, Inc., is a corporation which was organized on June 24, 1975, as a small business corporation engaged in the business of laundering clothes. Ralph Masucci is President of claimant and owns 90% of its stock. Robert Masucci is the son of Ralph Masucci. At the time of claimant's incorporation, Robert was issued 5% of claimant's stock and was designated the Secretary and a Director of claimant. Robert was also employed from the outset of claimant's incorporation as Manager. However, in his deposition testimony, Ralph Masucci insisted that Robert really had just "a token job" and that his title of Manager was meaningless because Ralph actually managed the business. (Deposition Transcript of Ralph Masucci at 18, dated June 19, 1982).

The defendant vehicle was bought in June 1978 to be used primarily for the pickup and delivery of laundry. However, Ralph admitted that he sometimes used it for shopping. Claimant's store hours were from 8:00 a.m. to 7:00 p.m. six to seven days a week but there were no specific times for pickups or deliveries (Tr. at 20, 24-25).

There were three sets of keys to defendant vehicle. One set was kept by Ralph, one set was left at the laundromat, and one set was kept hidden in the defendant vehicle. According to Ralph, Robert had permission to use the vehicle only for business reasons—"primarily to pick up laundry." There were no written restrictions regarding Robert's use of the vehicle, but Ralph told Robert "not to gallivant" with defendant vehicle (Tr. 24, 38).

Ralph was the manager of a factory in Long Island City and was rarely at the laundromat. However, he claims that he knew that Robert always returned the defendant vehicle after the laundromat closed and did not use it for his own personal use because the defendant vehicle would be parked outside of his house when he returned home from work. According to Ralph, the time of night that Robert would return the defendant vehicle varied between 5:00 and 7:00 p.m.. There were never any pickups or deliveries of laundry after 7:00 p.m. and Ralph claims that he never noticed the defendant vehicle being returned later than 7:00 p.m. (Tr. 26–28).

After returning the defendant vehicle for the evening, Robert would either keep the keys or hang them on a key rack in the kitchen. Robert had a room at his father's house and would receive mail at that address. However, at times Robert would "stay with friends" and Ralph would not know his whereabouts (Tr. 28, 29).

Ralph did not see Robert at all on September 12, 1978. Ralph is not sure exactly when he last saw defendant vehicle on that date, but agreed that it must have been at about 5:00 p.m.. At about 6:00 p.m. on the morning of September 13, 1978, Ralph realized that defendant vehicle was missing. He did not search the house for the keys that Robert would have used, but he did drive past the laundromat to see if the defendant vehicle was parked there. Ralph and his other son, Richard, then proceeded to the police station to report that defendant vehicle had been stolen. Ralph as-

[1]. The case was referred by Judge Joseph M. McLaughlin to the undersigned on January 3, 1985 to issue a report and recommendation on the outstanding motion.

sumed that the defendant vehicle had been stolen because he had had vehicles stolen in the past and there was a high rate of stolen cars in his neighborhood. Ralph did not try to contact Robert because he did not know where he was (Tr. 29–33, 42–44).

## DISCUSSION

■ Claimant argues that because the criminal proceedings against Robert Masucci have been terminated, the defendant vehicle should be returned to claimant (Defendant's Memorandum of Law In Opposition to Motion For Summary Judgment at 8, November 7, 1984). However, claimant's contention is without merit because an action to institute a forfeiture is a proceeding *in rem* which stands wholly independent of and unaffected by any criminal proceeding *in personam*. *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).

In addition, forfeiture proceedings against the property of innocent owners have traditionally been upheld as constitutional, despite claims of due process violations. 416 U.S. at 680, 94 S.Ct. at 2090. The Supreme Court in *Calero-Toledo, supra*, specifically indicated that forfeiture was not limited only to those persons who were "significantly involved in a criminal enterprise." *See United States v. One 1974 Cadillac Eldorado Sedan*, 548 F.2d 421, 424 (2d Cir.1977).

■ However, the Court did acknowledge that the "broad sweep" of forfeiture statutes could in some situations give rise to "serious constitutional questions" and went on to suggest that an innocent owner might escape forfeiture of his property in two limited situations. *Calero-Toledo*, 416 U.S. at 688–689, 94 S.Ct. at 2094. The first would be where the property had been taken from the innocent owner "without his privity or consent." *Id.* This situation merely reiterates the statutory exemption found in both 21 U.S.C. § 881 and 49 U.S.C.A. § 782 regarding conveyances "unlawfully in the possession of a person ... in violation of the criminal laws of the United States, or of any State." To sustain this defense to forfeiture, the owner must establish not only that the user of the conveyance was in possession of the same unlawfully at the time of the illegal act, but also that the user of the conveyance acquired its possession by a criminal act. *United States v. One 1978 Chrysler LeBaron Station Wagon, etc.*, 531 F.Supp. 32, 34 (E.D. N.Y.1981); *United States v. One 1971 Ford Truck*, 346 F.Supp. 613, 619 (C.D.Ca. 1972).

The second situation suggested by the Supreme Court in *Calero-Toledo* as possibly allowing exemption from forfeiture involves a two-part test. The owner of the property in question must prove: (1) "[T]hat he was uninvolved in and unaware of the wrongful activity ...;" and (2) "[t]hat he had done all that reasonably could be expected to prevent the proscribed use of his property." *Calero-Toledo*, 416 U.S. at 689, 94 S.Ct. at 2094. The rationale of these two narrow exceptions has been applied by federal courts in forfeiture proceedings since *Calero-Toledo*. *See, e.g., United States v. One 1973 Jaguar Coupe*, 431 F.Supp. 128, 130 (S.D.N.Y.1977).

■ In the instant case, claimant has alleged that it is exempt from forfeiture pursuant to the "unlawful possession" statutory exemptions found in 21 U.S.C. § 881 and 49 U.S.C.A. § 782. Specifically, claimant alleges that Robert Masucci's possession of the defendant vehicle at the time of the illegal cocaine transaction was unauthorized and outside the scope of his employment, therefore, causing his possession to be unlawful. In reviewing claimant's assertion, it is necessary to establish what restrictions, if any, were put on Robert Masucci's use of defendant vehicle by the claimant. As stated earlier, claimant's President admitted that there were no written regulations, but that Robert had been told by him "not to gallivant" with the defendant vehicle. It is clear, however, that Robert had access to a set of keys for the defendant vehicle at all times and that claimant's President merely relied on Robert's returning the defendant vehicle to its customary spot every night as proof that

Robert did not use the defendant vehicle for his own personal reasons. In addition, the family relationship between Ralph Masucci and Robert Masucci suggests that the scope of Robert's agency would extend to the use of defendant vehicle "for any purpose *unless expressly prohibited by the owner of the vehicle.*" (Emphasis added). *See United States v. One 1976 Buick Skylark*, 453 F.Supp. 639, 642 (D.Colo.1978). (where claimant and boyfriend lived together, use of her vehicle fell within family concept of agency and consent to use constituted unrestricted authorization in the absence of any specific restrictions by claimant). *Cf. United States v. One 1971 Ford Truck, supra* (unlawful possession established where father gave son permission to use vehicle on one specific occasion for one specific purpose and vehicle was used in illegal act subsequent to this in violation of father's specific order not to use the vehicle).

Given the facts in this case, where there is an established pattern of the use of defendant vehicle by Robert Masucci with claimant's consent, the issue is not one of unlawful possession but rather one of unauthorized use. *See United States v. One 1980 BMW 3201*, 559 F.Supp. 382 (E.D.N.Y. 1983) (unauthorized use where user has acquired possession with the permission of the owner); *United States v. One 1976 Buick Skylark, supra.* A review of case law indicates that claims by an innocent owner of "unauthorized use" raise the issue of whether the claimant/owner had done "all that reasonably could be expected" of him to prevent the illegal use of his property. This analysis is in accord with the second exemption suggested by the Supreme Court in *Calero-Toledo.* In applying this standard in a case where forfeiture was denied, one district court has suggested that the standard of what is reasonable must be adapted to the individual circumstances of the case. *See United States v. One 1976 Lincoln Mark IV*, 462 F.Supp. 1383, 1391 (W.D.Pa.1979).

[A] truly affirmative duty to prevent one's property from being used illegally might only be triggered by knowledge or suspicion of potential wrongdoing. Where one knows of another's criminal involvement ..., one might be charged with a greater degree of care than in a case where no such knowledge is established. *Id.*

The obvious issue is, therefore, whether claimant had knowledge of any previous criminal involvement by Robert Masucci that would lead him to suspect potential wrongdoing. The deposition testimony of claimant's President establishes that claimant did have such knowledge—both at the outset of Robert Masucci's employment as well as during the course of his employment. Specifically, claimant's President knew of Robert Masucci's arrest for illegal registration and was aware of Robert Masucci's arrest and conviction in 1974 for possession of stolen credit cards. Claimant's President also admits that Robert Masucci's employment was interrupted in and around 1977 while he served time in jail on convictions for possession of stolen property and attempted grand larceny (Tr. 10–11, 14–18). Clearly, claimant had a reasonable suspicion of Robert Masucci's potential wrongdoing and an affirmative duty to protect its property from being put to illegal use by him. In fact, Judge Neaher of this Court has previously held that a claimant failed to fulfill her duty to protect her property from illegal use when she permitted her brother free use of her vehicle while having knowledge of his past criminal record. *United States v. One 1977 Cadillac Brougham-Elegance*, 77 Civ. 2306 (E.D.N.Y., April 19, 1979).

Further, a review of case law analyzing what constitutes reasonable precautions, where previous criminal involvement is known, indicates that continued permission to use claimant's property with repeated warnings not to involve it in criminal activity is not sufficient. *See United States v. One 1971 Chevrolet Corvette, etc*, 393 F.Supp. 344 (E.D.Pa.1975). Significantly, here claimant's President did little, if anything, to effectively restrict his son's use of the defendant vehicle to business purposes only. His merely telling his son "not to

gallivant" with defendant vehicle while permitting him unlimited access to the keys to the vehicle is clearly not all that could reasonably have been done by him to prevent any illegal use of the vehicle.

### CONCLUSION

Therefore, for the reasons stated, the undersigned finds that the claimant has not shown that it fits within the narrow exemptions barring forfeiture as provided in 21 U.S.C. § 881 and 49 U.S.C.A. § 782 or as enunciated by *Calero-Toledo, supra.* Since there are no genuine issues of material fact to be resolved and the United States is entitled to prevail as a matter of law, the Government's motion for summary judgment should be granted.

Any objections to the recommendation of this report should be filed with the Honorable Joseph M. McLaughlin within 30 days of your receipt of this report.