COMMONWEALTH OF THE NORTHERN )    CRIMINAL CASE NO. 88-135
MARIANA ISLANDS,          )
                       )
        Plaintiff, )
                       )
       vs.           )             **ORDER**
                       )
GREGORIO M. TORRES,      )
aka GORRO TORRES,       )
                       )
       Defendant. )
                       )

## FACTS

On July 20, 1988 defendant Gregorio M. Torres was charged by way of information with two counts of distribution of marijuana in violation of 6 CMC § 2141(b((2). At that time, forfeiture of the vehicle allegedly used by defendant to distribute said marijuana (the "vehicle") was also sought by the Government pursuant to 6 CMC § 2150(a)(4).[1]/

On July 26, 1988 the Bank of Guam (the "Bank"), as lien holder of the vehicle sought to be forfeited, was notified of pending court proceedings against the vehicle. The Bank did not thereafter intervene in these proceedings.

---

[1]/ Section 2150 of Title 6 provides for seizure and forfeiture of vehicles if they are used to violate the drug laws of the Commonwealth.

Defendant was subsequently found guilty on both counts. The vehicle was ordered forfeited by the court on August 19, 1988.

On October 13, 1988 the Bank demanded full payment on the delinquent dealer loan for the seized vehicle from Joeten Motor Company pursuant to an unconditional guarantee agreement dated April 30, 1988 (Bank of Guam Security Agreement (Purchase Money): Motor Vehicle (25-1) 1003-30-115892) (the "Security Agreement"). On December 2, 1988 the Joeten Motor Company issued a check to the Bank for $9,260.35 representing the amount due on the vehicle purchased by defendant.2/

On December 6, 1988 the Joeten Motor Company, Inc. (the claimant) filed a claim of ownership in the forfeited vehicle. There is no dispute that the government had probable cause to seize and forfeit the vehicle. The only issue presented is whether there should be a remission of the forfeiture.

## THE FIRST HEARING

On February 3, 1989 the court heard initial arguments in this matter. At this hearing claimant argued that 6 CMC

2/
Essentially, the arrangement between the Joeten Motor Company and the Bank of Guam was a rather common commercial transaction. Joeten Motors was the dealer which sold the vehicle to Torres. It submitted the purchase contract to the Bank of Guam which "bought the paper." Thus Joeten Motors received its money for the car and Torres was obligated to pay for the car in monthly installments to the Bank of Guam. The agreement between the Bank and Joeten Motors contained an unconditional guaranty whereby if Torres defaulted, Joeten Motors had to pay the Bank all sums due it and the latter would transfer its lien in the vehicle to Joeten Motors.

702

§ 2150(a)(4)(B) is the "controlling provision" here and that this section mandates that this forfeiture be set aside. The section reads as follows:

(a) The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in subdivision (1) or (2), except that:

(B) No conveyance shall be forfeited under the provisions of this section by reason of any act or omission established by the owner thereof to have been committed or omitted by any person other than the owner while the conveyance was unlawfully in the possession of a person other than the owner in violation of the criminal laws of the United States, or of any State, territory, or the Commonwealth.

6 CMC § 2150(a)(4)(B) mirrors 21 U.S.C. § 881(a)(4)(B). To sustain a defense to forfeiture under this section, the owner must establish not only that the user of the vehicle was in possession of the vehicle unlawfully at the time of the illegal act, but also that the user of the vehicle acquired its possession by a criminal act. U.S. v. One 1978 Chrysler Le Baron Station Wagon, 648 F.Supp. 1048, 1050 (E.D. N.Y. 1986).

Despite claimant's contentions to the contrary, Gregorio Torres was the owner of the vehicle at the time it

was seized. The "owner" of a vehicle is defined as "the person entitled to possession of a vehicle as the purchaser under a conditional sales contract...." 9 CMC § 1103(e). Torres acquired the vehicle in a lawful manner by a straightforward purchase financed by the Bank of Guam. Therefore, 6 CMC § 2150(a)(4)(B) does not apply in this case.

Likewise, a complete analysis of 6 CMC § 2150 indicates that none of the exceptions to forfeiture enumerated therein are applicable in this case.

After disposing of the issue as to whether claimant qualifies for a statutory exception from forfeiture of the vehicle the court, <u>sua sponte</u>, raised the issue of the viability of a due process claim by the claimant by virtue of its status as guarantor to the Bank pursuant to the Security Agreement. The court then instructed the parties to submit supplemental briefs on this issue and set the matter down for further hearing.

### THE SECOND HEARING

On March 17, 1989 the parties again came before this court for argument in this matter. Claimant now contends that, even without a specific statutory exception, it should be entitled to relief from forfeiture of the vehicle since it is an "innocent owner" and the failure of the Commonwealth's forfeiture statute to provide for a remission procedure in this situation amounts to a denial of due process.

**704**

Statutory forfeitures of property which is entrusted by an innocent owner or lienor to another who uses it in violation of federal statutes have been held not to constitute a violation of the due process clause of the Fifth Amendment (applied to the states through the 14th Amendment). Van Oster v. Kansas, 272 U.S. 465, 47 S.Ct. 133, 71 L.Ed. 354 (1926). Despite the proliferation of forfeiture statutes at the state and federal levels, the innocence of the owner of the property subject to forfeiture has almost uniformly been rejected as a defense. Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 683, 94 S.Ct. 2080, 2092, 40 L.Ed.2d 452 (1974); see also, 50 ALR3d 1351.

In Pearson Yacht the Supreme Court reasoned that "[t]o the extent that such forfeiture provisions are applied to lessors, bailors, or secured creditors who are innocent of any wrongdoing, confiscation may have the desirable effect of inducing them to exercise greater care in transferring possession of their property." Id at 687-688, 94 S.Ct. at 2094. However, the Court went on to note that there may be circumstances in which the broad sweep of forfeiture statutes give rise to serious constitutional questions. Initially, "it would be difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his privity or consent." Id. This exception is codified in the CNMI under 6 CMC § 2150(a)(4)(B). As previously noted, this section is inapplicable in the instant case.

**705**

Likewise,

"the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property; for, in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive." Id. at 689-90, 94 S.Ct. at 2094-95.

The court in Pearson Yacht denied remission of the forfeiture of the lessor's yacht because no allegation was made or proof offered that the lessor did all that it reasonably could to avoid having its property put to unlawful use. Id. at 690, 94 S.Ct. at 2095.

In this case, the claimant has offered no proof that it did all it reasonably could to avoid having the vehicle put to unlawful use. Other than maintaining that it is "innocent," claimant has come forward with nothing to show what steps were taken, if any, to prevent the proscribed use of the vehicle. Thus, the court could deny claimant's petition for remission on this basis alone.

However, even assuming that the claimant is truely innocent and exercised great care in transferring possession of the vehicle, in order for claimant to avail itself to the innocent owner defense alluded to in Pearson Yacht, it must show that it had an ownership interest in the vehicle at the time the illegal acts which were the basis for the forfeiture were committed. See, United States v. Stowell, 133 U.S. 1, 17,

**706**

10 S.Ct. 244, 247, 33 L.Ed. 555; Simons v. United States, 541 F.2d 1351, 1352 (9th Cir. 1976) (The forfeiture statute takes effect immediately upon the commission of the illegal act. At that moment the right to the property vests in the government, and when forfeiture is sought, the condemnation when obtained relates back to that time and avoids all intermediate sales and alienations, even as to purchasers in good faith.)

The defendant was convicted of selling marijuana on July 2nd and 5th of 1988. The vehicle was later forfeited upon a finding that it was used to facilitate these sales. Therefore, under the "relation back" doctrine enunciated in Stowell, claimant must show ownership of the vehicle at the time defendant sold the marijuana.

Claimant supports its claim of ownership by pointing out the fact that it had unconditionally guaranteed defendant's debt to the Bank under the Security Agreement. Claimant then reasons that it was, at all times, the de facto owner of the vehicle pursuant to its role as an unconditional guarantor. This argument, while enticing, is flawed in several respects.

Generally, a "guarantor" is one who promises to answer for the debt or default of another. United States v. Frisk, 675 F.2d 1079, 1082 (9th Cir. 1982). A guaranty contract is collateral to the principal contract between the creditor and the principal debtor. Woods-Tucker Leasing Corp. v. Kellum, 641 F.2d 210, 213 (5th Cir. 1981). Default on the primary contract by the debtor ripens an unconditional guaranty into an

707

actionable liability of the guarantor separate and apart from that of the principal debtor. The guarantor's obligation becomes absolute and is no longer secondary; the creditor may pursue the guarantor without obligation to first seek payment from the principal debtor. Chevron Chemical Co. v. Mecham, 536 F.Supp. 1036, 1043 (D.C. Utah 1982). Where a guaranty provides that the guarantor's obligations are unconditional, the guarantor's liability attaches immediately upon default by the primary obligor. Skandinaviska Enskilda Banken v. Rathaus, 624 F.Supp. 207, 211 (S.D. NY 1985). No cause of action arises on a guaranty until the debtor defaults. Kee v. Lofton, 737 P.2d 55, 58 (Kan. App. 1987).

In this case, the vehicle was ordered forfeited on August 19, 1988. The Bank then made a demand for payment on claimant pursuant to the Security Agreement. On December 2, 1988, claimant paid the Bank the amount owing on defendant's delinquent note. The Bank subsequently transferred its secured interest of the vehicle to Joeten Motors. It was not until this transfer of the certificate of title that claimant had any ownership interest in the vehicle. Prior to its payment to the Bank as unconditional guarantor of defendant's note, claimant had nothing more than a contigent liability which was dependent on a default by Torres.

For purposes of secured interests in personal property, an "owner" is defined as follows:

"Owner" means a person having all the incidents of ownership including the legal title of a vehicle whether or not such person lends, rents or pledges the vehicle; the person entitled to the possession of a vehicle as the purchaser under a conditional sales contract; the mortgagor of a vehicle; the government, when entitled to the possession and use of a vehicle under a lease, lease-sale, or rental-purchase agreement for a period of 12 months or more. 9 CMC § 1103(e).

The registration and perfection of a secured interest for motor vehicles are treated specially in the law. A standard Uniform Commercial Code (UCC) financial statement is not required. 5 CMC § 9302(3)(b).[3/] The registration, transfer of the ownership and perfection of a security interest is done in accordance with 9 CMC § 2103. Any security interest is noted on the certificate of title issued by the Bureau of Motor Vehicles. 9 CMC § 2103(d). Until this is done, no security interest is perfected.

██ ██ A plain reading of these statutes leads to the unalterable conclusion that claimant was not an "owner" of the vehicle at the time that such vehicle was involved in the criminal activity which eventually led to its forfeiture. Thus,

---

[3/] However, if the vehicle is inventory held for sale by a person who is in the business of selling the vehicles (such as a dealer of automobiles), then the UCC provision must be followed. In this case we are not concerned with a vehicle held for sale to the public. It had already been sold to Torres.

709

under the "relation back" doctrine expressed in Stowell, claimant cannot avail itself of any exception to forfeiture as an "innocent owner." Opposition to forfeiture by a claimant who acquired his interest after the illegal use must be dismissed. Simons v. United States, supra, 541 F.2d at 1352 and cases cited therein.

Finally, claimant contends that it is a secured creditor and should be entitled to a remission procedure as a due process matter, citing State v. Rice, 626 P.2d 104 (Alaska 1981).

In State v. Rice, 626 P.2d 104 (Alaska 1981) the Alaska Supreme Court concluded that an innocent creditor who has done all that it could to prevent illegal activity should be entitled to remission. The Court found that a company with a security interest in an airplane was deprived of its constitutional right of substantive due process by virtue of the failure of Alaska's statutory scheme relating to forfeitures to provide for remission of the interests of innocent non-negligent third parties in the forfeited item. Id at 114.

Although the Rice case goes against the great weight of authority (see 50 ALR3d 1351), the court finds the logic behind the opinion intriguing. However, that case is inapplicable here since the claimant in this action was clearly not a secured creditor (or even a creditor) until after the vehicle was forfeited.

It should be noted in closing that claimant is not without remedy. Claimant may wish to proceed against Torres for payment. However, the vehicle must remain in the possession of the government.4/

For the foregoing reasons, claimant's motion for return of the forfeited vehicle is hereby DENIED.

Dated at Saipan, MP, this 27TH day of March, 1989.

_____
Robert A. Hefner, Chief Judge

---

4/
The Government has also raised certain estoppel and standing defenses to the claim made by Joeten Motors. Since it is found that the claim must fail, these issues need not be addressed.

711