## SKANDINAVISKA ENSKILDA BANKEN, Plaintiff,

v.

## Bernt RATHAUS, also known as Bernt C. Rathaus, Defendant.

### No. 85 Civ. 3208 (RWS).

United States District Court, S.D. New York.

Nov. 22, 1985.

Seward & Kissel, New York City, for plaintiff; M. William Munno, James F.X. Hiler, of counsel.

Lehrich & Lehrich, New York City, for defendant; Hyman D. Lehrich, Eric Moss, of counsel.

## OPINION

SWEET, District Judge.

The defendant in this action for collection of a debt, Bernt C. Rathaus ("Rathaus"), has moved pursuant to Rule 55(c) of the Federal Rules of Civil Procedure for an order vacating a default for failure to serve a timely answer and has moved pursuant to Rule 42(a) for an order consolidating this action with the action entitled *Sundsvallsbanken v. Fondmetal, Inc. and Robern International, Inc.,* 624 F.Supp. 811 (S.D.N.Y.1985). Plaintiff, Skandinaviska Enskilda Banken ("SEB") cross-moved for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure. For the reasons set forth below, which constitute the findings of fact and conclusions of law, SEB's motion for summary judgment is granted.

### Summary Judgment Standards

A motion for summary judgment requires the district courts to resolve all doubts and draw all reasonable inferences in favor of the party opposing the motion, *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *United States v. One Tintoretto Painting Entitled "The Holy Family with Saint Catherine and Honored Donor",* 691 F.2d 603, 606 (2d Cir. 1982), to allow the development of a full factual record through trial of the issues presented, a policy which is limited by the grant of summary judgment. *See Jaroslawicz v. Seedman,* 528 F.2d 727, 731 (2d Cir.1975). On the other hand, a litigant's failure to allege substantial facts in dispute or his mere reliance on an unsubstantiated denial of the accuracy of the opponents' affidavits is insufficient to controvert a motion for summary judgment. *Project Release v. Prevost,* 722 F.2d 960, 968 (2d

Cir.1983); *see WIXT Television, Inc. v. Meredith Corp.*, 506 F.Supp. 1003 (N.D.N.Y.1980). In such circumstances the use of summary judgment is desirable to avoid imposing and incurring "fruitless expenses of litigation." *Merit Motors, Inc. v. Chrysler Corporation*, 569 F.2d 666, 673 (D.C.Cir.1977).

**Undisputed Facts**

SEB, a bank organized and existing under the laws of the Kingdom of Sweden and with its principal place of business in Stockholm, Sweden, brought this action to enforce Rathaus' obligation to unconditionally guarantee repayment of a loan that SEB made to a Swedish corporation called Fondmetall A.B. ("Fondmetall"). On February 7, 1983 Rathaus, a citizen and resident of New York State, executed a written agreement entitled "Continuing Guaranty" which unconditionally promised to pay SEB all indebtedness up to the principal amount of six hundred thousand Swedish Crowns ("SEK") plus interest due upon a loan agreement between SEB and Fondmetall entitled "Contract Cheque Account with Overdraft Facility." Under the contract, SEB granted Fondmetall a loan facility in the form of a cheque account overdraft privilege of up to SEK 1,200,000.00, with interest fixed at 4.5% over the discount rate set by the Central Bank of Sweden. Fondmetall also promised to pay penalty interest of 2% if it failed to repay the overdraft loans when due.

In addition to the Overdraft Facility, Fondmetall maintained a Foreign Currency Account with SEB, and drew loans totalling $270,000 before defaulting on these loans on July 31, 1984. This default prompted SEB's termination of Fondmetall's right to borrow under the contract,[1]

and on August 23, 1984 SEB demanded that Fondmetall repay the overdrawn SEK 1,200,000.00 which SEB had loaned under the contract, plus accrued interest. Fondmetall defaulted on this demand for repayment, triggering Rathaus' obligation under his unconditional guaranty of the account. SEB notified Rathaus of this default by letter of August 24, 1984, and demanded payment of SEK 600,000.00 pursuant to the guaranty. To date Rathaus has failed to honor any portion of his obligation under the guaranty, despite SEB's repeated attempts to secure such compliance.

In January 1985, SEB received over $134,000 (equivalent to approximately SEK 2,222,000) wired to Fondmetall from an Italian customer, Terninoss Terni. SEB seized the funds and credited them equally to the defaulted Overdraft Facility account and Foreign Currency account loans.

**Discussion**

Rathaus admits to all of the facts outlined above and opposes SEB's motion for summary judgment, however, with a request for additional time to pursue discovery under Rule 56(f) of the Federal Rules of Civil Procedure. Rule 56(f) provides:

> When Affidavits Are Unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justifying his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

> If the Bank deems that the security for the contract, or for any other undertaking by the borrower vis-a-vis the Bank is no longer adequate, or there is otherwise a risk that the borrower will not fulfil [sic] his obligations in due course, the Bank is entitled to terminate the use of the overdraft facility on a date to be decided by the Bank.

(Smith Declaration, Exhibit B, ¶ 17).

---

1. An English translation of section 17 of the Contract for the Overdraft Facility provides, in relevant part:

 Termination of the overdraft facility in certain cases

 Should the borrowere not fulfil [sic] in due course his obligations under this contract or any other undertaking vis-a-vis the Bank, or should the borrower misuse the account, the Bank is entitled to terminate the use of the overdraft facility immediately.

It is the duty of this court under Rule 56(f) to ensure that the parties have been given a reasonable opportunity to make their record complete before ruling on a motion for summary judgment. *Berne Street Enterprises, Inc. v. American Export Isbrandtsen Co.*, 289 F.Supp. 195 (S.D.N.Y.1968). However, Rule 56(f) is not a shield which will prevent the entry of summary judgment without a showing that the material sought is germane to the defense. *Quaker Chair Corp. v. Litton Business Systems, Inc.*, 71 F.R.D. 527 (S.D.N.Y.1976). "A 'bare assertion' that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment under Rule 56(f)." *Contemporary Mission, Inc. v. U.S. Postal Service*, 648 F.2d 97, 107 (2d Cir.1981).

 Pursuant to the requirements of Rule 56(f), Rathaus has attempted to demonstrate that he has three defenses to SEB's claim which require additional discovery of relevant material in the hands of SEB. Underlying these defenses is the claim of Rathaus that he has been defrauded by his former partner Anders J. Lofberg ("Lofberg") and that Lofberg's acts, together with those of the banks involved, have damaged him and relieved him of his liabilities.

Rathaus' first defense is that SEB breached three [2] duties which it owed with regard to the Fondmetall accounts at SEB, and that he requires additional discovery under Rule 56(f) to substantiate this defense. Specifically Rathaus charges that the funds wired to Fondmetall's account at SEB were not properly accounted for, and should have been applied to reduce the debt in the Overdraft Facility account which he guaranteed. Rathaus contends that SEB has failed to produce account instructions for the two Fondmetall accounts and has failed to show that the seized Italian funds were not destined for the Overdraft account.

However, SEB has provided documentation relating to the Terninoss Terni transaction. In the Reply Declaration of Bengt A.S. Smith, bank attorney (¶¶ 4–6), SEB establishes that the funds were wired for deposit into Fondmetall's Foreign Exchange account, and not to the Overdraft cheque account guaranteed by Rathaus.[3] A copy of the wire advice from Citibank, the origin of the Terninoss Terni funds, marked with the Fondmetall Foreign Exchange account number is attached as an exhibit to the affidavit. Smith also rebuts Rathaus' assertion that Terninoss Terni gave any deposit instructions to SEB regarding the wired funds (¶ 5) and Rathaus has alleged no facts. as opposed to speculation, on which he bases his defense.

Rathaus' second defense alleges that another Swedish Bank, Sundsvallsbanken ("SVB"), agreed to indemnify him as to his guarantee of the Fondmetall account at SEB, and that SEB agreed to this substitu-

---

**2.** The first two duties alleged require only brief treatment, as Rathaus has not stated that they require additional factual development. In his answer, Rathaus claims that SEB "failed to preseve and protect the collateral pledged" under the contract for the Overdraft facility. Neither the contract nor Rathaus' guaranty indicates that there was any collateral for the contract, and SEB flatly states that no collateral was pledged. Rathaus also claims that SEB breached its duty to pursue Fondmetall for the overdue loan before demanding payment of Rathaus. SEB has no such duty and it was specifically negated by the following provision of the Rathaus guaranty:

> Guarantors waive any right to require bank to (a) proceed agianst Borrowers ... or (c) pursue any other remedy in Bank's power whatsoever.

(Smith Delcaration, Exhibit A, ¶ 5).

**3.** As a matter of New York law, which by consent governs the construction of the Continuing Guaranty, the bank was not even obligated to divide the seized funds evenly between the two defaulted accounts, in view of the fact that the funds were wired to the Fondmetall Foreign Exchange Accounts. Both parties to this action conceded the authority of *Long Island Trust Co. v. Vendall, Inc.*, 35 Misc.2d 464, 466, 231 N.Y. S.2d 131 (Sup.Ct.Nassau Co.1962), in which the court ruled "[T]he mere fact that there is a surety for one of the debts does not preclude the creditor from applying a payment to the debt [for] which he has no security or less security (citations omitted)."

tion of SVB on the guaranty. To support this assertion, Rathaus stated that "SEB was kept constantly advised" of the negotiations between SVB, Rathaus and his partner Lofberg (Rathaus Affidavit ¶ 4) and that "SEB was directly concerned with, was advised of, and concurred in the terms of the aforementioned agreements" (Rathaus Affidavit ¶ 5). Rathaus asserts, pursuant to Rule 56(f), that SEB possesses some documentary evidence or can attest to its approval of this indemnity by SVB. However, Rathaus has not produced a single affidavit or other piece of documentary evidence to support the existence of such an agreement by SEB.

The documentary evidence which has been submitted, belies the contention that SVB undertook to fulfill his obligations to SEB under his unconditional guaranty. Exhibit A of the Rathaus affidavit, the "Limited Release and Indemnification Agreement" of June 7, 1984, states that the indemnification was not written to cover any claim "made under a personal guaranty from Bernt C. Rathaus to S.E. Banken, Sweden, for the debt of Fondmetall AB, a copy of which is attached hereto as Exhibit B," (p. 1., ¶ 1). Rathaus asserts that although these documents underlying his negotiations with Lofberg and SVB purport only to indemnify his *corporations* from demands by SEB, this was a drafting error and they were meant to release him from personal liability from the guaranty of the Fondmetall account. Rathaus offers only one piece of evidence to substantiate this charge of a drafting error, a letter written by his attorney to SVB, sent five months after the execution of the indemnity agreement. Rathaus has failed to provide affidavits of anyone present at the SVB negotiations, any inconsistent prior drafts of agreement, or any contemporaneous correspondence among the parties to the negotiation. Any such evidence would contradict the explicit designation of parties to the indemnification agreement and would, therefore, run afoul of the agreements' integration clause, which provides

in part "This agreement constitutes the entire understanding between the parties hereto covering the subject matter hereof and supercedes, cancels and abrogates all pre-existing understandings between the parties, whether written or oral, covering said subject matter." (Rathaus Affidavit Exhibit A, Doc. 2 ¶ 11). Similarly, Rathaus has demonstrated no basis for his speculation that SEB accepted SVB as substitute guarantor, and without a firmer foundation these are merely "bare assertions" that undisclosed facts exist in the face of powerful evidence to the contrary, and cannot support denial of a summary judgment motion under Rule 56(f). *Contemporary Mission, Inc. v. U.S. Postal Service, supra,* 648 F.2d at 107.

Rathaus' final claim is that his unconditional guaranty obligation only extends to fifty percent of the indebtedness of the Overdraft Facility Account because the other half was guaranteed by Lofberg. Rathaus asserts that SEB represented that any calls on the guaranty would be borne equally by Rathaus and Lofberg and that any payments received by SEB would be credited against their personal guarantees *pari passu.* Here too, Rathaus has not submitted any evidence to support his understanding of the agreement, has not pointed to any specific documents or information which he would seek to discover regarding this interpretation, and has submitted documents which controvert his interpretation of the guarantee.

Rathaus merely states that he has a "distinct recollection that this understanding was reduced to writing and entered into SEB's records" (Rathaus Affidavit 9/23/85, ¶ 5), but offers no other basis for its existence. SEB has responded to this allegation, stating that it has no writing which in any way alters or divides his obligations to unconditionally guarantee the debt in the account up to SEK 600,000.00. This obligation appears to exist independent of the obligations of any other guarantor.

Rathaus has failed to demonstrate that there are any disputed issues of fact which warrant a full trial of this action. Furthermore, he has not demonstrated that postponement of a ruling on this motion, pursuant to Rule 56(f), would enable him to rebut SEB's showing that no material factual disputes exist.

■ SEB is entitled to judgment on its debt as a matter of law. The language of Rathaus' Continuing Guaranty is unambiguous and unconditional. The guaranty states:

> Whereas SKANDINAVISKA EN-SKILDA BANKEN (hereinafter called bank) has promised to grant to Fondmetall AB (hereinafter called borrowers) an overdraft facility of SEK 1,200,000.—provided that the obligations of the borrowers under the said financial accomodations [sic] are guaranteed to Bank by the undersigned (hereinafter called Guarantors);
>
> Now therefore we [Rathaus], for valuable consideration *unconditionally guarantee and promise to pay to Bank, or order, on demand,* in lawful money in the Kingdom of Sweden any and all indebtedness of Borrowers to Bank under said financial accomodations [sic]. (Smith Decl., Ex. A, ¶ 1; emphasis added).

Where the guaranty provides that the guarantor's obligations are unconditional, the guarantor's liability attaches immediately upon a default by the primary obligor. *General Phoenx Corp. v. Cabot,* 300 N.Y. 87, 93, 89 N.E.2d 238 (1949). Rathaus admits that he issued an absolute guarantee to SEB, that SEB served him with repeated payment demands, and that this debt is as yet unpaid. SEB is, therefore, entitled to summary judgment, making it unnecessary to consider defendant's motions to vacate default and to consolidate this action.

Submit judgment on notice.

IT IS SO ORDERED.