**SEWARD & KISSEL, Plaintiff,**

v.

**SMITH WILSON CO., INC., Defendant.**

**No. 92 Civ. 0284 (CHT).**

United States District Court,
S.D. New York.

March 2, 1993.

Seward & Kissel, pro se; (Mark J. Hyland, of counsel).

Carl E. Person, New York City, for defendant.

## OPINION

TENNEY, District Judge:

This case arose out of a dispute over unpaid legal fees charged by the plaintiff, Seward & Kissel ("Seward & Kissel"), a New York law firm, to the defendant, Smith Wilson Co., Inc. ("Smith Wilson"), an Illinois corporation. The court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 (1988). The case was initially assigned to Kevin T. Duffy, J., who entered a default judgment. Defendant moved to vacate that judgment, and plaintiff cross-moved for summary judgment. Following these motions, the case was transferred here pursuant to local rules. For the reasons stated below, the plaintiff's motion for summary judgment is granted.[1]

---

1. Because the plaintiff is entitled to summary judgment, it is not necessary to consider the motion to vacate the default judgment. *See* *Skandinaviska Enskilda Banken v. Rathaus,* 624 F.Supp. 207, 211 (S.D.N.Y.1985).

## BACKGROUND

Smith Wilson retained Seward & Kissel from May of 1989 through September of 1991. Seward & Kissel billed Smith Wilson approximately $210,000 for legal services from May of 1989 through January of 1991; there were additional expenses of $11,000 incurred in connection with legal services by Seward & Kissel from January to September of 1991. Smith Wilson made a partial payment of $72,000; Seward & Kissel continued to represent Smith Wilson on various matters despite Smith Wilson's failure to bring its outstanding debt to a current status.

However, during the above period, a dispute arose over the collection of the unpaid fees. In December of 1990, Smith Wilson's chairman, Geoffrey Flagstad ("Flagstad"), negotiated a payment schedule with the plaintiff to be fulfilled over the course of the next year. Letter from Geoffrey L. Flagstad, Chairman, Smith Wilson, to James Hancock, attorney for plaintiff, dated December 4, 1990. By mid-January of 1991, Seward & Kissel had not received either the December or January payments. Letter from Hancock to Flagstad dated January 17, 1991. Once again, the parties negotiated a revised payment plan,[2] which involved the signing of an agreement and two promissory notes by Smith Wilson.

The standard promissory notes, provided by Seward & Kissel, were amended at the request of Smith Wilson's in-house counsel to reflect that plaintiff would not attempt to enforce the notes before September of 1991.

Complaint, Exh. A. The notes were payable on demand; they each contained a provision that Smith Wilson would pay all costs incurred by Seward & Kissel in collecting the stated amount, including attorneys' fees, in the event of default. Finally, the notes provided (in bold face type):

THIS PROMISSORY NOTE SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK. [SMITH WILSON] HEREBY SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK OR THE UNITED STATES FEDERAL COURTS SITTING IN THE STATE OF NEW YORK AND TO THE EXTENT PERMITTED BY LAW WAIVES ALL RIGHT TO OBJECT TO THE JURISDICTION OF SUCH COURTS AND CONSENTS TO THE ENTRY OF JUDGMENT BY SUCH COURTS ON EX PARTE MOTION BY THE HOLDER HEREOF IN THE EVENT OF A DEFAULT HEREUNDER.

Complaint, Exhs. B, C.

The amended notes and agreement were executed in July of 1991.[3] Again, however, Smith Wilson failed to make any payments. Seward & Kissel attempted repeatedly to collect some part of the fees. Smith Wilson responded by seeking to negotiate a new payment plan yet again. Flagstad wrote: "We request a payment plan to retire our outstanding balance to your firm." Letter

---

2. According to an affidavit of a Seward & Kissel attorney who at this time had spoken repeatedly with both Smith Wilson's president, Kent Crombie, and its chairman, Flagstad, about the payments, both officers assured him that there were no objections to the amount of the bills or the quality of the services. Affidavit of James H. Hancock, sworn to July 8, 1992, attached to Notice of Cross Motion ("Hancock Aff."), at 9, ¶ 18. Smith Wilson claimed that cash flow problems slowed down bill payment. *Id.* Flagstad now claims that Seward & Kissel's bills were outrageous, and that Smith Wilson "repeatedly asked plaintiff for clarity on these outrageous sums and ambiguous descriptions." Declaration of Geoffrey L. Flagstad in Support of Motion, sworn to June 16, 1992, at 3, ¶ 9. Crombie states that Seward & Kissel's attorneys (he mentions no one by name) told him and Flagstad

"that the purpose of the notes was to collateralize debts." Declaration of Kent E. Crombie in Support of Motion, sworn to July 16, 1992, at 2, ¶ 6. Despite Smith Wilson's current objections to the fees charged, Flagstad voiced no objection in correspondence with Seward & Kissel during payment negotiations. *See* Letter from Flagstad to Hancock dated December 4, 1990; Letter from Flagstad to Hancock dated November 6, 1991. Moreover, defendant has not produced a single document in which clarification was sought, and the two letters from Flagstad to Hancock both acknowledge the obligation to pay the outstanding debt.

3. The agreement and first promissory note were dated January 1, 1991; the second promissory note was dated July 1, 1991. However, it appears that both were signed in July. Hancock Aff. at 11, ¶¶ 21–22.

from Flagstad to Hancock dated November 6, 1991.

On November 19, 1991, the plaintiff made formal demand for payment, requesting that Smith Wilson send an affidavit committing to a payment plan. Letter from Hancock to Flagstad dated November 19, 1991. Smith Wilson requested that the November payment of $16,000 be carried over for one month, so that a total of $32,000 would be due in December; Seward & Kissel consented to this change. Letter from Hancock to Flagstad dated November 21, 1991. Smith Wilson made no response. In mid-December, however, the plaintiff received a letter from an attorney then representing Smith Wilson, who expressed the opinion that the promissory notes signed by Smith Wilson were voidable because Seward & Kissel did not advise Smith Wilson to seek independent counsel to assist in negotiating the notes. Letter from James Potter to Hancock dated December 19, 1991.

Hancock responded, stating that "the existing documentation was reviewed, commented on, revised in accordance with comments from, and finally approved by, independent counsel for Smith Wilson Company, Inc.... The role of that independent counsel is evidenced by the correspondence related to that documentation. We suggest that you consult your client for details." Letter from Hancock to Potter dated December 20, 1991. Hancock also pointed out that the documents were reviewed by Smith Wilson's president, Kent Crombie ("Crombie"), and its chairman, Flagstad. Hancock received no response to that letter.

On January 14, 1992, Seward & Kissel filed a complaint seeking to enforce the notes or recover on accounts stated or breach of contract. On January 21, a summons was served on Smith Wilson at its offices in Buffalo Grove, Illinois, via hand delivery by George Bringe, a process server duly authorized in that state. Bringe had attempted service on January 17, but was unsuccessful. Affidavit of George A. Bringe, sworn to July 1, 1992, attached to Notice of Cross Motion ("Bringe Aff."), at 2, ¶ 3. When he went back on January 21, none of the corporate officers were at Smith Wilson's office.

Bringe spoke with a Smith Wilson secretary, Diane Carter. Bringe claims that he was told that those authorized to accept service would not return any time soon. *Id.*

Carter claims that she told Bringe that one of the company's officers would return within an hour. Declaration of Diane Carter in Support of Motion, sworn to June 16, 1992 ("Carter Dec."), at 2, ¶ 4. Carter asserts that Bringe asked her what her position was, and that when she told him she was a secretary, he told her that she could sign for the documents. *Id.* Carter does not state whether she ever told Bringe that she was not authorized to accept service. Bringe left the summons with Carter, however; she states that "[h]e left and I gave the envelope to my supervisor." *Id.*

The procedural history of the case becomes somewhat tortuous at this point. Smith Wilson did not file an answer within the required time. On February 20, 1992— ten days after the answer was due—the Clerk entered default against Smith Wilson. The same day, Judge Duffy signed the default judgment order. The entry of default noted by the clerk and the judge's signed default judgment order were included in the same document.

On February 24—before the default entry and default judgment were filed or docketed—Smith Wilson filed the answer, which was docketed the same day. The order was filed on February 25, and docketed on February 27. At that time the case was closed. As a result of the delay in filing time of the judgment, according to the docket sheet the answer preceded the default judgment. On February 28, Smith Wilson's counsel filed an affirmation in opposition to plaintiff's application for default judgment. On June 19, 1992, Smith Wilson moved to vacate the default judgment, after which Seward & Kissel filed the cross motion for summary judgment.

## DISCUSSION

### I. *Service of Process*

#### A. Waiver of Insufficiency of Service of Process as a Defense

■ Smith Wilson has waived the right to raise insufficiency of process as a defense.

Although as explained below, the defense also fails substantively, the time for Smith Wilson to raise the defense is past.

The sufficiency of service was the subject of controversy in *Santos v. State Farm Ins. Co.*, 902 F.2d 1092 (2d Cir.1990). The plaintiff, Santos, filed a complaint on August 2, 1985 in the Bankruptcy Court for the Southern District of New York. Although he delivered copies of the summons and complaint to State Farm's attorneys on the same day, the attorneys were not authorized to receive service. Neither State Farm nor the attorneys advised Santos that this was the case; defendant served an answer on August 30, and an amended answer on September 19. In each one, State Farm claimed lack of personal jurisdiction as an affirmative defense, but did not raise insufficiency of service of process.

Santos's bankruptcy petition was dismissed in April of 1986, and he refiled in district court. State Farm served another answer omitting any defense of lack of personal jurisdiction. In May 1987, State Farm moved for summary judgment, and raised the defense of insufficiency of service of process as a defense for the first time. The motion was made returnable before the Bankruptcy Court; that court declined to rule on the motion and referred the case back to the district court. In district court, State Farm again claimed insufficiency of service of process in a motion to dismiss, this time on January 17, 1989. The district court granted the defendants' motion to dismiss in a Memorandum and Order dated August 7, 1989.

Santos appealed the dismissal, raising several arguments not relevant here. Although the Second Circuit rejected his contentions, the court reversed based on State Farm's waiver of any defense of insufficiency of service of process. Citing Rule 12(b) and Rule 12(h)(1), the court pointed out that State Farm's original defense as raised in the answer was a defense of lack of personal jurisdiction under Rule 12(b)(2), which did not encompass a service of process defense under 12(b)(5). The court explained that State Farm was entitled to raise the service of process defense by motion, but that such a motion should have been made before any

responsive pleading. Because State Farm had filed the answer immediately after receiving the summons and complaint, and did not make the Rule 12(b)(5) motion until May of 1987, the court concluded that the defense "was not asserted in a motion permitted by the Rules." *Id.* at 1095; *see also Caribe Carriers, Ltd. v. C.E. Heath & Co.*, 784 F.Supp. 1119, 1124 (S.D.N.Y.1992).

Similar circumstances exist here. Smith Wilson answered the complaint (although late), and did not raise a service of process defense pursuant to Rule 12 in that answer. Moreover, defendant did not even raise a personal jurisdiction defense that might arguably have preserved such a motion. The motion to dismiss pursuant to Rule 12(b)(5) was not made until June 19, 1992, when Smith Wilson moved to vacate the default judgment. Rule 12(b), however, requires that if the defense is made by motion rather than in a pleading, that defense "shall be made before pleading if a further pleading is permitted." Once Smith Wilson filed the answer—i.e., a responsive pleading—the right to raise a 12(b)(5) motion was lost. *See Federal Home Loan Mortgage Corp. v. Dutch Lane Associates*, 775 F.Supp. 133 (S.D.N.Y.1991). Because the motion was untimely, the defense was waived, and cannot be renewed now.

### B. Agency Theory

█ Even if Smith Wilson had not waived the defense of insufficiency of process, service was, in any event, not defective. Under the rules governing service of process, the federal court is to look to state law in the event of a dispute concerning effectiveness of service. *See* Fed.R.Civ.P. 4(c)(2)(C)(i), 4(e). Smith Wilson argues that under New York law, Diane Carter was not authorized to accept service.

The applicable provision of New York law states that

[p]ersonal service upon a corporation ... shall be made by delivering the summons ... to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service.

N.Y.Civ.Prac.L. & R. 311 (McKinney 1990). The scope of the section—i.e., the group of people who properly may accept service—has expanded since its inception. *See Fashion Page, Ltd. v. Zurich Ins. Co.,* 50 N.Y.2d 265, 406 N.E.2d 747, 428 N.Y.S.2d 890 (1980).

The New York Court of Appeals analyzed the history of Rule 311 in great detail in *Fashion Page,* and declined to read the Rule in the "narrow and technical manner" advanced by the defendant. *Id.* at 271, 406 N.E.2d at 750, 428 N.Y.S.2d at 893. In certain circumstances, New York courts have permitted what might otherwise constitute ineffective service of process based on the "redelivery theory."

The New York Court of Appeals first addressed this theory in *McDonald v. Ames Supply Co.,* 22 N.Y.2d 111, 238 N.E.2d 726, 291 N.Y.S.2d 328 (1968). Although service was found to be improper in that case, the court stated that as a general rule, once delivery was made to the wrong person, redelivery would not cure the error. However, "[d]istinguishable are those cases in which the process server has acted reasonably in placing the summons within reach of the defendant, and, therefore, with 'due diligence' in fulfilling the statutory requirement of personal delivery." 22 N.Y.2d at 115, 238 N.E.2d at 728, 291 N.Y.S.2d at 331. In *McDonald,* the court did not uphold service of process because, among other things, the person who signed for the papers was not even employed by the defendant, and the process server had never asked if he was in fact an employee of the defendant. The *McDonald* court limited the situations in which redelivery would cure erroneous delivery to those "where the defendant resists service." *Id.*

The concept of redelivery has been expanded, however, to include cases where defendant has not made any affirmative effort to resist service. In *Shedlin v. State Tax Comm'n,* 62 A.D.2d 806, 406 N.Y.S.2d 596 (3d Dep't.1978), the court relied on three factors to find effective service where there was a redelivery: The server had made a previous "good faith attempt" to serve the defendant;

once the server found a receptionist to whom he could give the papers, she agreed to deliver them to the proper person the next day (although she disavowed any authority to accept them); and finally, the defendant ultimately received process. *Id.* at 808, 406 N.Y.S.2d 596; *see also Leo v. General Elec. Co.,* 111 F.R.D. 407 (E.D.N.Y.1986) (allowing delivery of process to an unauthorized secretary who redelivered the papers the same day).

Examining this case in light of the factors noted above, process was effective because of the redelivery by Carter. Bringe made a good faith effort when he attempted to deliver on January 17. Bringe Aff. at 2, ¶ 3. Although Carter may not have been authorized by the company to accept service, she nonetheless did accept and sign for the summons and complaint; admittedly she is an employee of the defendant; and she states that upon Bringe's departure, she passed the envelope on to her supervisor. Carter Dec. at 2, ¶ 4. Finally, the summons and complaint were actually received by the defendant. The defendant does not claim that any harm was caused by the delay before the papers reached the authorized recipients.[4]

Because the process server used due diligence, and the summons and complaint were redelivered upon the process server's departure (according to the secretary), service of process was effective.

## II. Summary Judgment

### A. Standard

■ The standard for a summary judgment motion is well established: the nonmoving party must demonstrate that there exists a genuine issue of material fact in order to defeat a summary judgment motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ A defendant may not defeat a summary judgment motion merely by making far-reaching allegations that are not ground-

---

4. If there had been any delay due to faulty service, it seems likely that the lateness of the an-

swer would have been attributed to the deficiency in service.

ed in fact. *See Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505. Those issues that are genuine are those which "have a real basis in the record before the court, and most significantly, must be 'material to the outcome of the litigation.'" *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.,* 709 F.Supp. 438, 442 (S.D.N.Y.1989) (quoting *Knight,* 804 F.2d at 11, citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). To be material, "the disputed issues must implicate cognizable legal principles upon which recovery may be had." *Id.*

### B. The Promissory Notes

■ There is no doubt that Smith Wilson executed the Promissory Notes and Agreement committing to a debt of $172,908.63 plus interest. Smith Wilson has indisputably failed to make payment under the notes. The defense that Smith Wilson raises, now that litigation has commenced, is that the notes were not intended to be enforceable, but were to serve only as "collateral." The company defended with sweeping allegations of fraud, which are contradicted by the letters sent to Seward & Kissel by Smith Wilson. *See* Letter from Flagstad to Hancock dated December 4, 1990; Letter from Flagstad to Hancock dated November 6, 1991. Yet, Smith Wilson, upon request of the company's in-house counsel, Joel Ferrin, amended the notes to make them enforceable only after September 1, 1991. Complaint, Exh. A. Such an amendment certainly indicates that Smith Wilson realized the very strong possibility that the plaintiff would attempt to enforce the notes after that date.

Smith Wilson does not state whether Ferrin served as counsel at the time. Ferrin was sent a copy of at least one letter from plaintiff to defendant. *See* Letter from Hancock to Crombie dated June 19, 1991. Hancock avers that he spoke with Ferrin about the amendment to the agreement. While Smith Wilson initially alleged that it had no independent representation, *see* Answer at 3, ¶ 16, the defendant's Rule 3(g) statement is devoid of any such assertion. The plaintiff had alleged that "Smith Wilson was represented by independent counsel in connection with the negotiation and execution of the Agreement and the First and Second Promissory Note[s]." Plaintiff's Rule 3(g) Statement, ¶ 27.

Any such assertion in a movant's Rule 3(g) statement not denied in the non-movant's Rule 3(g) statement is deemed admitted for purposes of a summary judgment motion. *See Amsler v. Corwin Petroleum Corp.,* 715 F.Supp. 103, 105 (S.D.N.Y.1989). In light of the defendant's failure to contradict or deny this allegation, Smith Wilson is deemed to have admitted that the company had in-house counsel—and made use of its in-house counsel—at the time of negotiations with Seward & Kissel.

Moreover, the alleged conversations concerning the nature of the notes, *see supra* note 2, took place prior to the signing of the notes, and are barred by the parol evidence rule. *See Bloor v. Shapiro,* 32 B.R. 993, 999 (S.D.N.Y.1983) (barring introduction of evidence that written guarantees were intended to be conditional when the guarantees themselves expressly stated that they were unconditional); *Benderson Dev. Co. v. Hallaway Properties, Inc.,* 115 A.D.2d 339, 339, 495 N.Y.S.2d 820, 821 (4th Dep't.1985) (holding that alleged collateral agreement in which holder of note agreed not to seek payment was "inconsistent with the terms of the note and barred by the parol evidence rule"), *aff'd,* 67 N.Y.2d 963, 494 N.E.2d 106, 502 N.Y.S.2d 1001 (1986); *Weyerhaeuser Co. v. Gershman,* 324 F.2d 163, 165 (2d Cir.1963) (granting plaintiff's summary judgment motion and deeming inadmissible the defendant's allegations concerning a contemporaneous agreement not to present notes for payment on maturity).

Here defendant has attempted to do exactly what the summary judgment rules are designed to protect against: "show that there is some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356, "rely[ing] on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight,* 804 F.2d at 12. There

is no evidence to support the claim that there was an agreement not to enforce the notes; such an assertion is contradicted by Smith Wilson's request to prevent enforcement before September 1, 1991.

Smith Wilson argues that summary judgment is inappropriate because "[d]efendant registered objection to portions of plaintiff's statements and on one occasion plaintiff submitted a revised statement eliminating and acknowledging $8,400 in excessive charges." Defendant's Rule 3(g) Statement at 2, ¶ 6. Defendant has produced no evidence of such objections, and Flagstad sent at least two letters to plaintiff acknowledging the debt and professing Smith Wilson's intent to pay off the debt. Letter from Flagstad to Hancock dated December 4, 1990; Letter from Flagstad to Hancock dated November 6, 1991. Presumably the mention of $8,400 in paragraph 6 of the 3(g) statement refers to a letter sent to Smith Wilson by Hancock in which Hancock urged Flagstad to contact him to set up a payment schedule. Letter from Hancock to Flagstad dated November 27, 1990. Defendant has failed to produce any evidence that the write-off was at defendant's request; the context is best understood by examining the letter in its entirety.[5]

In sum, Smith Wilson's responses to the summary judgment motion are of little use. The statement submitted in accordance with Rule 3(g) consists of seven paragraphs that contain allegations unsupported by the record or the law. Rule 3(g) explicitly requires that

> [a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

*See Carlton v. Interfaith Medical Center,* 612 F.Supp. 118, 123 n. 4 (S.D.N.Y.1985) (where plaintiff's Rule 3(g) statement "merely consists of five conclusions of law," statistics cited in defendant's Rule 3(g) statement are deemed admitted); *United States v. Pilot Petroleum Assocs., Inc.,* 122 F.R.D. 422, 423 (E.D.N.Y.1988) ("True, a Rule 3(g) statement must be short and concise; but it cannot be anemic. Within its four corners, the nonmovant's Rule 3(g) statement must contain a summary of the facts that are in dispute."). Moreover, any statements not denied in the nonmovant's Rule 3(g) statement are deemed admitted for purposes of summary judgment. *Amsler,* 715 F.Supp. at 105.

Defendant has opposed the summary judgment motion by submitting a single two page affirmation by the defendant's attorney—no affidavits are included. Smith Wilson has failed to show that any genuine issues of material fact exist to justify allowing defendant to proceed to trial.

## C. Account Stated

■ Seward & Kissel has established an account stated as to a final statement of October 2, 1991; the account was for a total of $11,988.03. Summary judgment is properly granted upon an attorney's application for fees on the basis of an account stated, and is enforceable absent a showing of "fraud, mistake or other equitable considerations." *Rosenman Colin Freund Lewis & Cohen v. Neuman,* 93 A.D.2d 745, 746, 461 N.Y.S.2d 297, 299 (1st Dep't.1983); *see also Bresler v. Hostage,* 696 F.Supp. 46 (S.D.N.Y.1988) (granting summary judgment on account stated). Defendant has failed specifically to

5. Hancock wrote:

Dear Geoffrey:

I am enclosing herewith our November 27, 1990 statements for work done in connection with the following matters:

[computations with total appears here]

Mr. Hyland has billed you separately for the HABIB matter.

Mr. Hyland and I have collectively written off slightly in excess of $8,400 of recorded time in connection with our billings this month.

Our records show that there is an outstanding balance of $9,034.76 in respect of the July 18, 1990 bill relating to the Air Toulouse International matter.

Our records show that there is an outstanding balance of $28,750.87 due in respect of the March 5, 1990 bill and an outstanding balance of $30,748.72 due in respect of the November 13, 1990 bill, each relating to the Habib matter.

Please call when you have reviewed the enclosures so that we can agree on a schedule of payment. Our records indicate that your last payment on account was September 28, 1990.

Best regards.

Sincerely,

/s/

address this account, and summary judgment for plaintiff as to the account is granted.

### D. Attorneys' Fees

■ The promissory notes contained a provision stating that the attorneys' fees and costs incurred in collecting payment on the notes were to be paid by Smith Wilson. This provision is enforceable under New York law. *See Torres & Leonard, P.C. v. Select Professional Realties, Ltd.*, 118 A.D.2d 467, 469, 499 N.Y.S.2d 707, 709 (1st Dep't.1986); *Manufacturers & Traders Trust Co. v. Franz*, 46 A.D.2d 161, 163, 361 N.Y.S.2d 782, 784 (4th Dep't.1974). Therefore, defendant is also liable for all costs and fees associated with this action, with the exception of attorneys' fees incurred in recovering the $11,988.03 as to the account stated.

### E. Defendant's Rule 56(f) Motion

Defendant has moved for limited discovery pursuant to Fed.R.Civ.P. 56(f), claiming that the invoices submitted by the plaintiff do not state billing with sufficient detail. While the court has an obligation to rule on a summary judgment motion based on a complete record, requiring production of more detailed invoices from Seward & Kissel is both impracticable and unnecessary. Defendant does not dispute that the notes were signed, and that they have not been paid; any detail relating to the invoices is unnecessary, because no dispute as to the material facts exists. *See Sundsvallsbanken v. Fondmetal, Inc.*, 624 F.Supp. 811, 818 (S.D.N.Y.1985).

### CONCLUSION

Smith Wilson waived any defense it may have had under Rule 12(b)(5), and even absent that waiver, any such defense would have failed. Summary judgment is granted based on the promissory notes that Smith Wilson signed: $137,493.62 as to the first note, and $35,415.01 as to the second. Plaintiff is entitled to attorneys' fees incurred in enforcing those notes. Furthermore, the invoice for $11,988.03 constitutes an account stated, and is enforceable. Thus defendant is liable for a total of $184,896.66. Plaintiff is also entitled to interest on the debts from the date the action was brought.

Because summary judgment is granted on all counts, it is not necessary to consider the defendant's motion to vacate the default judgment. Defendant's cross-motion for further discovery pursuant to Rule 56(f) is denied.

This opinion shall not constitute a final judgment, but is issued subject to filing of a supplemental order by this court. Plaintiff is to submit a proposed order on notice, with an accompanying affidavit detailing the fees and interest allowable pursuant to the notes and account stated.

SO ORDERED.