**In re WOODSTONE LIMITED PART-NERSHIP, d/b/a Woodstone Apartments, Debtor.**

**No. CV 92–0079(RR).**

United States District Court, E.D. New York.

Jan. 19, 1993.

stone's attempt to reclassify or reduce First Gibraltar's security claim is barred by the common law rule articulated by the Supreme Court in *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), it reverses the denial of dismissal.

### *Factual Background*

This dispute originates with Woodstone's receipt, in August 1987, of $4,945,000 from First Texas Savings Association ("First Texas"). In return, Woodstone executed a fifteen-year note and mortgage, which collectively became known as the original "loan agreement." The details of this agreement are set forth in the bankruptcy court's opinion, familiarity with which is assumed. This court notes only that Woodstone was obliged under the loan agreement to pay five percent interest during both the second and third years of the note, *i.e.,* from August 1988 to August 1990. In August 1988, however, Woodstone sought a modification of the interest payment schedule. Several months of negotiations ensued between Woodstone and First Texas, culminating in an informal understanding that interest would continue to accrue at the five percent contract rate, but would be paid during the second year of the loan at the reduced rate of 2.5%.

Draft documents relating to the proposed modification were exchanged between the parties. Throughout, however, First Texas explicitly advised Woodstone in writing that it would not be bound by these instruments. For example, in a September 23, 1988 letter from First Texas's counsel, Woodstone was advised:

> The enclosed documents are for negotiation purposes only and do not constitute an agreement of First Texas to modify the Loan. Any agreement of First Texas to modify the Loan shall be evidenced only by First Texas' execution and delivery to Borrower of a signed Loan Modification Agreement....

Phillips, Nizer, Benjamin, Krim & Ballon by Eric G. Waxman, III, Garden City, NY, for creditor/appellant.

Jesse I. Levine, P.C., Garden City, NY, for debtor/appellee.

### MEMORANDUM AND ORDER

RAGGI, District Judge:

First Gibraltar Bank, FSB ("First Gibraltar") appeals from the decision and order of United States Bankruptcy Judge Marvin A. Holland, denying its motion to dismiss the claim of debtor, Woodstone Limited Partnership ("Woodstone"), to reclassify or reduce First Gibraltar's $5,153,151 secured claim. *In re Woodstone Ltd. Partnership,* 133 B.R. 678 (Bankr.E.D.N.Y.1991).[1] Because this court is convinced that Wood-

---

1. The bankruptcy court did dismiss Woodstone's application to expunge First Gibraltar's secured claim. No cross-appeal is pursued as to that ruling.

Counsel further advised that "any agreement of First Texas to modify the Loan shall be additionally conditioned upon receipt by First Texas of all necessary regulatory or supervisory approvals which are required or deemed necessary for First Texas to enter into the Modification."

On October 28, 1988, the Federal Home Loan Bank Board ("FHLBB") in Dallas gave its written approval to the proposed modification. Counsel for First Texas advised its client of this decision and transmitted written instructions that the approval and a memorandum stating the purpose of the modification be placed at the front of the Woodstone loan file so that the modification would be obvious to a bank examiner. It is unclear whether First Texas ever carried out these instructions. It is undisputed, however, that First Texas never formally executed a modification agreement. Neither is there any record of approval of the modification agreement by First Texas's Board of Directors.

On December 21, 1988, First Texas's counsel transmitted modification documents to Woodstone's counsel for execution. Once again, counsel advised that the bank did not as yet consider itself bound by these documents:

Any agreement of First Texas to modify the terms of the Existing Loan Documents shall be evidenced only by First Texas' unconditional delivery to Borrower of the final documents necessary to effect the Proposed Modification, duly executed by an authorized representative of First Texas. Prior to First Texas' execution and delivery of final modification documents, no agreement of First Texas to modify the terms of any of the Existing Loan Documents shall be implied.

Woodstone did execute the modification documents but did not remit them purportedly because it was told by First Texas's counsel not to do so.

On December 28, 1988, First Texas failed, prompting the FHLBB to appoint the Federal Savings and Loan Insurance Corporation ("FSLIC") as receiver of the bank. That same day, the FSLIC sold most of the bank's assets, including the Woodstone mortgage and note, to First Gibraltar.

Soon thereafter, Woodstone also encountered financial difficulties. During the second year of the note, it made debt payments in the amount of $93,031, far less than the $240,875 that would have been due at the unmodified rate of five percent interest, but also considerably less than the $120,437.50 that would have been due at the rate of 2.5 percent.

On November 6, 1989, Woodstone filed for Chapter 11 reorganization. First Gibraltar filed proof of its secured claim with the bankruptcy court. On April 9, 1991, Woodstone moved to expunge, reduce, or reclassify this claim. It relied, in part, on the modification agreement, which it argued was valid and enforceable against First Gibraltar as successor in interest to First Texas. First Gibraltar's opposition to the motion was treated as the equivalent of a motion to dismiss for failure to state a claim. It urged rejection of any modification agreement in light of (1) the *D'Oench, Duhme* doctrine; (2) the limitations of 12 U.S.C. § 1823(e); (3) the federal holder in due course doctrine; and (4) Texas contract law. The bankruptcy court rejected all four arguments, prompting this appeal.

### Discussion

This court has carefully considered all the papers filed by both sides, as well as the record of proceedings before the bankruptcy court. It finds that the *D'Oench, Duhme* doctrine does bar Woodstone from relying on a modification agreement that was never executed by First Texas and, accordingly, reverses.[2]

In *D'Oench, Duhme & Co. v. FDIC, supra,* the Supreme Court held that federal common law protects the Federal Deposit Insurance Corporation from unexecuted "side agreements." In that case, the FDIC

---

**2.** Because the *D'Oench, Duhme* doctrine is controlling here, the court does not address appellant's alternative arguments for reversal.

had sought to collect on a facially valid note that it had assumed from a federally insured bank. The borrower claimed that an oral agreement between the original contracting parties relieved it of any obligation to pay the note. Rather, the note was executed simply to permit the bank to inflate the value of its loan portfolio. *Id.*, 315 U.S. at 454, 62 S.Ct. at 678. The Supreme Court held that the borrower was estopped from invoking this oral agreement as a defense to its obligations under the note since it had lent itself "to a scheme or arrangement whereby the banking authority on which [the FDIC] relied in insuring the bank was or was likely to be misled." *Id.* at 460, 62 S.Ct. at 681.

■ Although *D'Oench, Duhme* specifically involved the FDIC in its corporate capacity, the doctrine is equally applicable to the FSLIC. *FSLIC v. Two Rivers Assocs.*, 880 F.2d 1267, 1274–75 (11th Cir. 1989) (noting that the Fifth, Sixth, Eighth, and Tenth Circuits have all applied *D'Oench, Duhme* to the FSLIC); *accord FSLIC v. Master S. Inc.*, No. CV 88–1062, 1988 WL 127575, *2–*3, 1988 U.S.Dist. LEXIS 13270, *6–*7 (E.D.N.Y. Nov. 14, 1988). Moreover, it applies to bank regulators in their receivership as well as corporate capacities. *See, e.g., FSLIC v. Two Rivers Assocs.*, 880 F.2d at 1276–77; *Mainland Sav. Ass'n v. Riverfront Assocs.*, 872 F.2d 955, 956 (10th Cir.), *cert. denied*, 493 U.S. 890, 110 S.Ct. 235, 107 L.Ed.2d 186 (1989); *Beighley v. FDIC*, 868 F.2d 776, 784 (5th Cir.1989); *FSLIC v. Murray*, 853 F.2d 1251, 1254 (5th Cir.1988). Finally, the doctrine protects the successors in interest of the FDIC and FSLIC. *FSLIC v. Griffin*, 935 F.2d 691, 697–98 (5th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1163, 117 L.Ed.2d 410 (1992); *Porras v. Petroplex Sav. Assoc.*, 903 F.2d 379, 380–81 (5th Cir. 1990).

In this case, the bankruptcy court held, and the debtor argues, that *D'Oench, Duhme* does not bar Woodstone from relying on an unexecuted modification of the loan agreement because the modification was not secret nor is there evidence of any negligence, recklessness, or intent to de-

ceive on Woodstone's part. *In re Woodstone Ltd. Partnership*, 133 B.R. at 684–85. This interpretation of *D'Oench, Duhme* focuses on the Supreme Court's condemnation of debtors who lend themselves to "a scheme" likely to mislead banking authorities. *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. at 460, 62 S.Ct. at 680.

■ In fact, however, *D'Oench, Duhme* is not limited only to "secret" agreements. It applies whenever there is an understanding "outside the bank's records." *FSLIC v. Griffin*, 935 F.2d at 698. Neither is an actual "scheme" required, insofar as that word connotes something fraudulent and underhanded. "All that is relevant is that the agreements are not in the [bank's] files." *Id.* As the Supreme Court made clear in *D'Oench, Duhme*, even a borrower who "may not have intended to deceive any person" would still be estopped from raising a defense based on an unexecuted agreement. *Id.*, 315 U.S. at 459, 62 S.Ct. at 680. In short, contrary to the holding of the bankruptcy court, "lack of bad faith, recklessness, or even negligence" is simply "not a defense in *D'Oench* cases." *Baumann v. Savers Federal Sav. & Loan Assoc.*, 934 F.2d 1506, 1516 (11th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992); *accord Timberland Design v. First Service Bank*, 932 F.2d 46, 48 (1st Cir.1991); *Bell & Murphy & Assoc. v. Interfirst Bank Gateway*, 894 F.2d 750, 753–54 (5th Cir.), *cert. denied*, 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990).

■ The rationale for this application of the *D'Oench, Duhme* doctrine is simple: regardless of whether the debtor and the bank may be bound under applicable state law by their oral agreements, to permit such unrecorded understandings to stand against bank authorities or their successors is to interject an intolerable element of uncertainty into the already chaotic arena of bank bailouts and reorganization. Accordingly, as between " 'depositors and creditors of a failed bank, who cannot protect themselves from secret agreements,' " and debtors, who are "in a position to pro-

tect themselves by ensuring that [their oral understandings] are adequately documented [in a bank's] records," the *D'Oench, Duhme* doctrine requires that courts favor the former. *Campbell Leasing, Inc. v. FDIC*, 901 F.2d 1244, 1248 (5th Cir.1990) (citations omitted).

Cases cited by the bankruptcy court do not persuade the court otherwise. For example, *FDIC v. Meo*, 505 F.2d 790 (9th Cir.1974), which focused on a bank's own secret dealings, independent of any agreement with the debtor, has been criticized for reflecting an "outdated understanding of the *D'Oench* doctrine." *FSLIC v. Gordy*, 928 F.2d 1558, 1567 n. 14 (11th Cir. 1991). In *In re Kanterman*, 108 B.R. 432 (S.D.N.Y.1989), the issue was whether a bankruptcy trustee could challenge the validity of a mortgage note purportedly signed by the debtor to defraud her other creditors. Noting that the trustee acted not for the benefit of the debtor but for her creditors, the court held that *D'Oench, Duhme* did not bar claims relating to fraudulent conveyances, conduct that was unrelated to "any secret agreement between the debtor and the bank." *Id.* at 434.

■ In this case the issue is not whether First Texas honored its obligations under the original loan agreement. Neither is there any question as to the legal validity of the original agreement. The only issue is whether First Gibraltar's secured rights, derived as the result of an FSLIC takeover of First Texas, are limited by an unexecuted agreement between Woodstone and First Texas. *D'Oench, Duhme* and its progeny hold that no such limitation can be invoked by the debtor. Woodstone, after all, was in negotiations with First Texas in order to obtain better terms and conditions on the original loan agreement. To the extent it wished to ensure its entitlement to any modifications should First Texas become insolvent, it was clearly obliged to obtain First Texas's *written* approval of the amendment. The *D'Oench, Duhme* doctrine does not require proof that the debtor was engaged in fraud or duplicity. "[T]he *D'Oench* doctrine applies where the

only element of fault on the part of the borrower was his or her failure to reduce the agreement to writing." *Timberland Design, Inc. v. First Service Bank*, 932 F.2d at 49; *accord Bell & Murphy v. Interfirst Bank Gateway*, 894 F.2d at 753–54 (applicability of *D'Oench, Duhme* does not turn on whether debtor acted in good faith; debtor "could have protected itself by insisting that the bank properly record the agreement; because it did not, it is estopped from asserting any claims arising out of the bank's alleged secret promise").

The bankruptcy court suggests that Woodstone, having executed the modification agreement itself, could do no more to memorialize its understanding with First Texas and that, but for the institution of the receivership action, First Texas would undoubtedly have signed the agreement. *In re Woodstone Ltd. Partnership*, 133 B.R. at 685. This ignores certain important facts. Woodstone did not, after all, return its executed copy of the modification agreement to First Texas. Although it claims its inaction was at the direction of First Texas's counsel, these very circumstances strongly suggest that the bank was not ready to finalize the agreement. While the bankruptcy court suggests that there may be a question under Texas law as to whether the parties' oral dealings were sufficient to give rise to an enforceable agreement between them, *id.* at 693, the fact remains that under the *D'Oench, Duhme* doctrine, Woodstone was not entitled to rely on an unexecuted agreement as against banking authorities.

■ Woodstone argues that in this case banking authorities were aware of the modification agreement. The FHLBB had, after all, formally approved it. Since the FHLBB appointed the FSLIC as First Texas's receiver, the former's knowledge of the modification should be imputed to the latter. Moreover, the bank may have actually placed the FHLBB approval in the Woodstone loan file.

This court is not persuaded by this argument. In *D'Oench, Duhme* itself, the Supreme Court suggested that bank authorities' knowledge of an unwritten agreement

was irrelevant to the doctrine's application. *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. at 459, 62 S.Ct. at 680; *accord FDIC v. McCullough*, 911 F.2d 593, 600 n. 5 (11th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991); *Kilpatrick v. Riddle*, 907 F.2d 1523, 1528 (5th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991); *Krauss v. FDIC*, 769 F.Supp. 519, 524 (S.D.N.Y. 1991); *First City Nat. Bank v. FDIC*, 730 F.Supp. 501, 510 (E.D.N.Y.1990). Further, FHLBB's approval of the proposed modification does not equate to FSLIC's knowledge that such modification was formally executed by the parties. Banking authorities may have known that the parties *contemplated* modifying Woodstone's interest payment obligations, but nothing in the bank records reveal that the parties formally *executed* this modification and thereby bound themselves to its terms.

The absence of a fully executed modification agreement is fatal to Woodstone's claim. The principle underlying the *D'Oench, Duhme* doctrine is, after all, to permit banking authorities taking over a failed financial institution to rely exclusively on bank records in determining assets and liabilities, without need to inquire into any possible limiting conditions or amendments. *See, e.g., FSLIC v. Two Rivers Assocs.*, 880 F.2d at 1275. Because the records in this case did not reveal an executed modification agreement, debtor is precluded from invoking any oral understanding to reduce its indebtedness to First Gibraltar.

■ In its decision and order, the bankruptcy court questioned the continued viability of *D'Oench, Duhme*, suggesting that it may be preempted by 12 U.S.C. § 1823(e). This proposition ignores the fact—made clear in almost every case cited in this Memorandum and Order—that since the enactment of section 1823(e) in 1950 as an amendment to the Federal Deposit Insurance Act, § 13(e), 64 Stat. 889 (1950), *D'Oench, Duhme* has been repeatedly and consistently cited as good precedent by the federal courts. Indeed, the Fifth Circuit has only recently rejected the suggestion

that section 1823(e) either preempts or otherwise affects the continued vitality of the rule established in *D'Oench, Duhme. FSLIC v. Griffin*, 935 F.2d at 698. This court finds the logic of the Fifth Circuit's holding persuasive.

Insofar as section 1823(e) reflects a congressional balancing of the competing interests of debtors, bank depositors and creditors, and the nation's banking authorities, it offers little assistance to Woodstone. The statute is unequivocal in its intolerance for unexecuted financial agreements:

> No agreement which tends to diminish or defeat the interest of the [Federal Deposit Insurance] Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
>
> (1) is in writing,
>
> (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>
> (4) has been, continuously, from the time of its execution, an official record of the depository institution.

In this case, it is clear that Woodstone could not satisfy this criteria. *In re Woodstone Partnership*, 133 B.R. at 687 ("section 1823(e) in its *current* form, would appear to bar Woodstone's arguments in support of its motion to reduce" First Gibraltar's claim). The modification agreement was simply never executed by First Texas, was never approved by its board of directors, and was never a part of the bank file.

■ The bankruptcy court, however, held that section 1823(e) was inapplicable because, by its terms, the statute does not

apply to the FSLIC. While it is correct that the law does not refer to the FSLIC, this court thinks the strict requirements of section 1823(e) do provide some logical support for the conclusion reached in this Memorandum, particularly in light of the close nexus that has generally existed between the statute and the common law doctrine of *D'Oench, Duhme*. Indeed, not only have courts routinely referred to section 1823(e) and the cases interpreting it as guidelines for the application of the *D'Oench, Duhme* doctrine, *see, e.g., Vernon v. RTC*, 907 F.2d 1101, 1105 (11th Cir.1990), but the expansion of *D'Oench, Duhme* also has been endorsed by amendments to the statute.

For example, although section 1823(e) originally applied only to the FDIC in its corporate capacity, federal courts have almost uniformly barred debtors from invoking unexecuted agreements against the FDIC as receiver or against the FSLIC. *See, e.g., FSLIC v. Two Rivers Assocs.*, 880 F.2d at 1274–75 (relying in part on Supreme Court's recognition in *Langley v. FDIC*, 484 U.S. 86, 90–92, 108 S.Ct. 396, 400–02, 98 L.Ed.2d 340 (1987), a section 1823(e) case, that bank authorities must be able to rely on bank records at the time they are deciding whether to liquidate assets or provide financing for purchase and assumption by another bank).

In 1989, Congress, in essence, approved this development in the common law when it enacted the Financial Institutions Reform, Recovery, and Enforcement Act, Pub.L. No. 101–73, 103 Stat. 183, (1989) (codified in scattered sections of 12 U.S.C.) ("FIRREA"). Therein, the protection of section 1823(e) was extended to the FDIC as receiver as well as to the FDIC and the Resolution Trust Corporation ("RTC") as the successors of the FSLIC. *See North Arkansas Medical Center v. Barrett*, 962 F.2d 780, 784–85 (8th Cir.1992) (upon enact-

ment of FIRREA, FSLIC is abolished and succeeded to by FDIC and RTC). The purpose of FIRREA was, after all, to aid banking authorities in their "immediate responsibilities of dealing with mounting bank failures in this country." *FDIC v. Wright*, 942 F.2d 1089, 1096 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992). To suggest, as does the bankruptcy court, that Congress, in giving full protection to the FDIC and the RTC as against any unexecuted agreements, was making an affirmative decision not to extend such protection to the FSLIC, *see In re Woodstone Ltd. Partnership*, 133 B.R. at 687, is simply illogical and at odds with the public policy concern of the legislation.[3] Indeed, to ensure that Congress's intent to protect banking authorities fully against unexecuted agreements is carried out, the courts have consistently applied the broader protections of FIRREA retroactively. *See, e.g., North Arkansas Medical Center v. Barrett*, 962 F.2d at 786–87; *FDIC v. Wright*, 942 F.2d at 1095–97; *FDIC v. Engel*, 746 F.Supp. 1223, 1223–24 (S.D.N.Y.1990); *RTC v. Dismuke*, 746 F.Supp. 104, 105–06 (N.D.Ga.1990); *FDIC v. Sullivan*, 744 F.Supp. 239, 241–42 (D.Colo.1990); *FDIC v. British–American Corp.*, 744 F.Supp. 116, 119 (E.D.N.C.1990).

Thus, although section 1823(e) may not formally apply to FSLIC receiverships, the statute's recent amendment confirms this court's conclusion that *D'Oench, Duhme* and its progeny are properly interpreted to bar any defense raised against the FSLIC or its successor based on an agreement never formally executed by the failed bank. The requirement—whether imposed by statute or common law—of a written agreement duly made a part of a bank's records provides clear notice to borrowers and lenders as to the actions they must take to ensure that their understandings will be given effect as against federal banking authorities. It safeguards against

---

**3.** Since FIRREA abolished the FSLIC and extended the protections of section 1823(e) to its successor entities, there was little need for Congress to consider the statute's applicability to the FSLIC. This case is an anomaly. Because First Gibraltar succeeded to the FSLIC's interest in First Texas prior to FIRREA, this court must

consider the rights of a now-defunct agency. Had the FSLIC undertaken to operate rather than dispose of First Texas, it would have eventually been succeeded by either the FDIC or RTC, both of which are fully protected by section 1823(e). *See North Arkansas Medical Center v. Barrett*, 962 F.2d at 784–85.

collusion by bank officials and borrowers on the eve of bank failure. Finally, and perhaps most important, it best ensures the public's interest in federal banking authorities being able to make responsible decisions when confronted with the urgency of a bank failure. *See Langley v. FDIC*, 484 U.S. at 91–95, 108 S.Ct. at 401–03.

Because no modification agreement was ever formally executed by First Texas nor made a part of its financial records, this court finds that Woodstone is barred from invoking such an agreement as a defense to the secured claim of First Gibraltar.

### Conclusion

Woodstone is estopped at common law from relying on an unexecuted agreement modifying its debt obligations to First Gibraltar. The ruling of the bankruptcy court is reversed and the case remanded for further proceedings consistent with this opinion.

SO ORDERED.