**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of First New York Bank for Business, Plaintiff,**

v.

**WRAPWELL CORPORATION, Louis Silberstein, Herman Silberstein, Aaron Silberstein, H.A.L. Holding Company, Armin Silberstein, and 94 Ninth Street Co., Ltd., Defendants.**

Nos. 93 Civ. 859 (CSH), 94 Civ. 5574 (CSH).

United States District Court, S.D. New York.

April 10, 1996.

---

12.  This order will not apply retroactively.

Marguerite Sagatelian, Federal Deposit Insurance Corporation, Legal Services Office, New York City, Linda S. Charet, of counsel, for plaintiff.

Leo Fox, New York City, Glenn P. Berger, of counsel, for defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge:

In these consolidated actions, the Federal Deposit Insurance Corporation ("FDIC"), as receiver for First New York Bank for Business ("FNY"), moves for summary judgment on five promissory notes signed by defendant Wrapwell Corporation and guaranteed by the other defendants. The defendants oppose the motion, asserting numerous defenses to the claims on the notes. The FDIC also moves to be named the successor party in interest in this matter, pursuant to Fed. R.Civ.P. 25(c).

### FACTS

These consolidated actions arise out of a series of loan agreements, promissory notes, and guarantees.

FNY and Wrapwell entered into a credit agreement ("Credit Agreement") on March 29, 1990 which provided for FNY to make loans to Wrapwell to finance Wrapwell's Christmas wrapping paper business. Affidavit of Linda Walker–Scharer ("W–S Aff."), Exh. A at 1. Under the terms of the Credit Agreement, FNY agreed to make available to defendants a line of credit of up to $3,000,-000. The advances on this line of credit took the form of promissory notes.

Two promissory notes were executed on March 29, 1990. The first note was for the principal amount of $1,070,000.00 ("Note A"); the second note was for the principal amount of $730,000.00 ("Note B"). W–S Aff., Exh. B & C. Both notes were payable in sixty consecutive monthly installments, commencing April 30, 1990. The defendants allege that they reached "an understanding" with FNY that, given the seasonal nature of the Christmas wrapping paper business, all sums due in a given year would be payable in December of that year. Silberstein Aff. in 93 Civ. 859 ("Silberstein Aff.$_1$") at ¶ 5. Two lump sum payments were made in December, 1990 and December, 1991. *Id.*

Defendants executed two additional promissory notes in April 1992. The first, issued

on April 3, 1992, was for the principal amount of $618,000.00 ("Note C"); the second, issued on April 14, 1992, was for the principal amount of $1,200,000.00 ("Note D"). W–S Aff., Exh. D & E. Notes C and D were both due for payment on April 30, 1992.

The parties describe the events of April 1992 differently. Plaintiff states that "despite its obligations under Notes C and D, and despite due demand, Wrapwell . . . failed to pay" any part of the principal balance and accrued interest due on Note C, or the remaining principal balance of $1,140,556.00 and accrued interest on Note D. W–S Aff., ¶ 10. Notes A and B and the Credit Agreement provide that upon "event of default," FNY may declare the entire unpaid principal amount of Notes A and B, and all unpaid accrued interest, to be immediately due and payable. W–S Aff., ¶ 11. Accordingly, after Wrapwell's defaults on Notes C and D, FNY made such declaration by a letter dated May 1, 1992, which letter is not in the Court's record. According to the FDIC, Wrapwell made no further payments to FNY, and still owes the FDIC, as FNY's successor party in interest, $3,323,556.00.[1]

According to defendants, in April 1992,

the bank departed from this custom and practice [of December payments] and demanded immediate payment of all outstanding amounts. Upon being advised that the Defendants could not suddenly make such payment without being afforded a reasonable opportunity to collect its [sic] own receivables, the bank agreed to enter into modification agreements in April, 1992, and October, 1992.

Unbeknownst to the Defendants, also in April 1992, the bank proceeded to send demands upon the Defendant's customers for payment of outstanding receivables to be paid directly to the bank.

Silberstein Aff.$_1$, ¶¶ 7–8 (exhibit citations omitted). However, nothing in the record supports defendants' allegation that FNY made such demands in April 1992. Additionally, the "modification agreements" referred to by defendants are simply Promissory Notes C, D, and E—an additional note described *infra*. Defendants assert that the Bank then "refused to extend the promissory notes of $1,800,000 which were due April 30, 1992, which had always been extended as a matter of course." Silberstein Affidavit in 94 Civ. 5574 ("Silberstein Aff.$_2$") at ¶ 12. Defendants provide no documentation that this was the "matter of course."

The defendants provided FNY with numerous guarantees of its loans. Before any of the notes at issue in this case were executed, defendants Louis and Herman Silberstein executed and delivered to FNY an unconditional guaranty of any and all of Wrapwell's liabilities. W–S Aff., Exh. F. On March 29, 1990, the execution date of Notes A and B, defendants Aaron Silberstein and H.A.L. Holding Company executed and delivered unconditional guarantees of any and all of Wrapwell's liabilities. The unconditional guarantees state that the guarantors

irrevocably, absolutely and unconditionally guarantee to the Bank payment when due, whether by acceleration or otherwise, of any and all liabilities of the Borrower to the Bank, together with all interest thereon and all attorney's fees, costs and expenses of collection incurred by the Bank in enforcing any of such liabilities.

W–S Aff., Exhs. F–H at 1.

On June 6, 1991, defendants Armin Silberstein and 94 Ninth Street Co., Ltd. executed

---

1. The exact amount owed by defendants to the FDIC is somewhat unclear. In its memorandum of law, the FDIC states that the entire unpaid balance on Notes A and B is $1,584,000.00. Plaintiff's Memorandum of Law in 93 Civ. 859 ("PM$_1$") at 3. However, Walker–Scharer states in her affidavit that the total aggregate owed on Notes A and B is $1,566,000.00. W–S Aff. at ¶ 13. To further complicate matters, Walker–Scharer's note-by-note list totals the amounts owed on Notes A and B to $1,565,000.00. W–S Aff. at ¶ 15, n. 1. According to this list, defendants then additionally owe $618,000.00 on Note

C and $1,140,556.00 on Note D, which is then incorrectly added so that the total owed on Notes A, B, C, and D is $3,324,556.00. *Id.*

I will assume for the purposes of this Opinion that the individualized subtotals listed in footnote 1 of Walker–Scharer's Affidavit are the correct amounts owing on the Notes, which amounts add up to $3,323,556.00. The exact amount at issue is, of course, irrelevant to the legal analysis in this opinion. If $3,323,556.00 is not the correct amount owed on the Notes, the parties should so inform the Court.

and delivered limited guarantees of Wrapwell's liabilities. Under these agreements, the defendants

> absolutely and unconditionally guarantee to the Bank payment when due, whether by acceleration or otherwise, of any and all liabilities of the Borrower to the Bank to any principal amount not exceeding $800,000 in the aggregate at any one time outstanding, plus and in addition to such amounts, all interest thereon and all attorney's fees, disbursements and expenses and all other costs and expenses of collection incurred by the Bank in connection with any of such liabilities. . . .

W–S Aff., Exhs. I–J at 1.

In June, 1992, the action underlying 93 Civ. 859 was brought in New York State Supreme Court. That action was removed to this Court in February, 1993 pursuant to 12 U.S.C. § 1819(b)(2), which extends federal jurisdiction to all civil suits to which the FDIC is a party. W–S Aff., ¶ 3.

On October 27, 1992, FNY made a final loan to defendant Wrapwell, which executed a final promissory note for the principal amount of $300,000 ("Note E"). Silberstein Aff.₁, Exh. C.

On or about November 13, 1992, FNY was declared unsound and unsafe, and the FDIC was appointed the bank's receiver. W–S Aff., ¶ 2. Wrapwell closed its doors in January, 1993.

The FDIC filed its second action on the remaining promissory note on August 19, 1994.

## DISCUSSION

### 1. FDIC is the Real Party In Interest

█ Federal Rule of Civil Procedure 25(c) provides that in case of any transfer of interest, the Court may, upon motion, direct the person to whom the interest is transferred to be substituted in the action in the place of the original party. Fed.R.Civ.P. 25(c).

The FDIC, as receiver of FNY, succeeds to "all rights, titles, powers, and privileges" of FNY, and may take over all assets of FNY and collect all money and obligations due FNY. 12 U.S.C. § 1821(d)(2)(A)–(B). Given

these rights and responsibilities, and noting that defendants state no opposition to plaintiff's Rule 25(c) motion, I hold that the FDIC is the true party in interest in this action, and order that it be substituted as plaintiff into the consolidated action.

### 2. FDIC's Summary Judgment Motion

█ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Issues that are genuine are those which "have a real basis in the record before the court, and most significantly, must be 'material to the outcome of the litigation.'" Litton Industries, Inc. v. Lehman Brothers Kuhn Loeb Inc., 709 F.Supp. 438, 442 (S.D.N.Y.1989) (quoting Knight v. U.S. Fire Insurance Co., 804 F.2d 9, 11 (2d Cir.1986), citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). In the absence of disputed, genuine issues, summary judgment is appropriate in the context of an action on a promissory note. Royal Bank of Canada v. Mahrle, 818 F.Supp. 60 (S.D.N.Y.1993); Seward & Kissel v. Smith Wilson Co., Inc., 814 F.Supp. 370 (S.D.N.Y.1993); Crumbliss v. Swerdlow, 158 A.D.2d 502, 551 N.Y.S.2d 265, 265 (2d Dept.1990).

The defendants in this consolidated action do not dispute the validity of the Credit Agreement, the promissory notes, or the guarantees. However, the defendants oppose plaintiff's summary judgment motion with several affirmative defenses: that FNY's conduct breached the parties' contract and their implied covenant of good faith and fair dealing, was commercially unreasonable under N.Y.U.C.C. § 9–207 and 9–504(3), and impaired the value of their collateral under N.Y.U.C.C. § 3–606.

### A. Defendants' U.C.C. Defenses

Defendants' defenses can be synthesized into one basic assertion: that FNY and FDIC unfairly impaired the value of Wrapwell's collateral—its accounts receivable—by

making commercially unreasonable efforts to collect those accounts.

Defendants rely upon three U.C.C. provisions in asserting this defense.

First, the defendants point to N.Y.U.C.C. § 9–207(1): "A secured party must use reasonable care in the custody and preservation of collateral in his possession."

Second, the defendants rely upon N.Y.U.C.C. § 9–504:

(1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. . . .

(3) Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.

Third, the defendants rely upon N.Y.U.C.C. § 3–606(1): "The holder [of a negotiable instrument] discharges any party to the instrument to the extent that without such party's consent the holder . . . (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

Plaintiff opposes these defenses on numerous grounds, each of which is addressed below.

### 1. Jurisdiction

■ Plaintiff's first objection to defendants' proffered defenses is jurisdictional. The FDIC argues that defendants' defenses are barred by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), which provides that:

Except as otherwise provided in this subsection, no court shall have jurisdiction over—(i) any claim or action for payment

from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver. . . .

12 U.S.C. § 1821(d)(13)(D). According to the FDIC, the arguments relied upon by defendants in their U.C.C.–based defenses are "in the nature of affirmative claims (for subrogation and contribution)" which FIRREA removed from this Court's jurisdiction in the absence of prescribed administrative procedures. Plaintiff's Reply Memorandum of Law in 94 Civ. 5574 ("PRM₂") at 6.

■ I reject this argument because I am persuaded by the consistent rulings of courts that have addressed the matter that FIRREA's jurisdictional limitations apply only to *creditors* bringing claims against the FDIC, not to *debtors* being sued by the FDIC. *See, e.g., In re Continental Financial Resources, Inc.,* 154 B.R. 385, 388 (D.Mass.1993) (FIRREA applies to claims against FDIC not challenges incident to FDIC's claims against debtors); *In re Purcell,* 150 B.R. 111, 114–16 (D.Vt.1993) (FIRREA does not apply to debtors); *In re All Season's Kitchen, Inc.,* 145 B.R. 391, 394–95 (Bankr.D.Vt.1992) (same). In the case at bar, defendants were debtors of FNY, now in the receivership of the FDIC, and their defenses are properly raised in this Court.[2]

### 2. Holder In Due Course

■ Plaintiff next argues that defendant Wrapwell is barred from asserting its personal defenses under the federal holder in due course ("HIDC") doctrine.[3] PRM₂ at 11. The federal holder in due course doctrine was originally developed in *Gunter v. Hutcheson,* 674 F.2d 862 (11th Cir.1982), cert. denied, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982), in response to note makers' allegations of fraud by the directors of a failed bank on a note later held by the FDIC.

---

2. Having held that § 1821(d)(13)(D) does not apply to debtors, I need not resolve the parties' dispute as to whether defendants' affirmative defenses would constitute "claims" or "actions" under that section.

3. This analysis applies only to Wrapwell, because it is the only note maker in this case. The other

defendants signed guarantees of the notes. Since guarantees are not negotiable instruments, their holders cannot claim HIDC protection. *RTC v. Maplewood Investments,* 31 F.3d 1276, 1292 (4th Cir.1994); *FDIC v. Payne,* 973 F.2d 403, 407–08 (5th Cir.1992).

The *Gunter* court developed the federal holder in due course doctrine because it "accepted the FDIC's argument that a federal common law rule of nonliability against these claims was necessary in order for the FDIC to accomplish its statutory objectives." *In Re 604 Columbus Avenue Realty Trust,* 968 F.2d 1332, 1349 (1st Cir.1992) (analyzing *Gunter*). The *Gunter* decision was grounded in large part upon the court's recognition that a uniform federal rule would provide assistance in the context of the "overnight decisions" and "extraordinary speed" needed when the FDIC acts to preserve the value of a failed institution through purchase and assumption agreements. *Gunter,* 674 F.2d at 869. The uniform federal rule was declared as follows:

> the FDIC has a complete defense to state and common law fraud claims on a note acquired by the FDIC in the execution of a purchase and assumption transaction, for value, in good faith, and without actual knowledge of the fraud at the time the FDIC entered into the purchase and assumption agreement.

*Id.* at 873.[4] However, the *Gunter* court explicitly limited its holding to situations in which the FDIC acts in its corporate capacity: the HIDC rule "applies only when the FDIC acquires a note in the execution of a purchase and assumption transaction." *Id.* at 872.

■ Circuit courts have since divided on the question of whether the federal holder in due course doctrine should be extended to apply to the FDIC when it acts as a receiver. *Compare In Re 604 Columbus Avenue Realty Trust,* 968 F.2d 1332, 1349 (1st Cir.1992) (HIDC status unjustified for FDIC as receiver); *FDIC v. Laguarta,* 939 F.2d 1231, 1239 n. 19 (5th Cir.1991) (HIDC status inapplicable to FDIC as receiver); *FDIC v. Gulf Life Ins. Co.,* 737 F.2d 1513 (11th Cir.1984) (same)

*with Campbell Leasing, Inc. v. FDIC,* 901 F.2d 1244, 1249 (5th Cir.1990) (extending HIDC protection to FDIC as receiver); *Firstsouth, F.A. v. Aqua Const., Inc.,* 858 F.2d 441, 443 (8th Cir.1988) (HIDC status appropriate for FSLIC as receiver); *FDIC v. McCullough,* 911 F.2d 593 (11th Cir.1990) (same). *See also FDIC v. Wood,* 758 F.2d 156 (6th Cir.1985) (granting FDIC in corporate capacity HIDC status but expressing no opinion as to HIDC status for FDIC as receiver).

The *Campbell* case strongly advocates conferring holder in due course status upon the FDIC as receiver. *Campbell,* 901 F.2d 1244. As explained in *Campbell,*

> The federal holder in due course doctrine bars the makers of promissory notes from asserting various "personal" defenses against the FDIC in connection with purchase and assumption transactions involving insolvent banks....
>
> The doctrine is grounded in the federal policy of "bringing to depositors sound, effective, and uninterrupted operation of the [nations'] banking system with resulting safety and liquidity of bank deposits."

901 F.2d at 1248 (citations omitted). The *Campbell* litigants challenged the applicability of the holder in due course doctrine, first, because the FDIC was acting as a receiver, and second, because the FDIC had acquired the disputed note in a bulk transfer and had notice that the note was overdue, which notice would destroy the FDIC's holder in due course status under a literal interpretation of U.C.C. sections such New York's § 3–302.

The *Campbell* court was unimpressed by these objections. As to the first, it declared that

> We find no logical reason to limit federal holder in due course protection to the FDIC in its corporate capacity, to the exclusion of its receivership function. In its

---

4. As noted in *604 Columbus Avenue,* "circuit courts have expanded the federal common law holder in due course doctrine to bar all personal defenses against the FDIC, and have looked to state law principles in order to distinguish between real and personal defenses." 968 F.2d at 1350.

Under New York law, a holder in due course is a holder who takes a negotiable instrument such

as a promissory note (a) for value, (b) in good faith, and (c) without notice that it is overdue or has been dishonored or of any defense against of claim to the instrument. N.Y.U.C.C. § 3–302(1). An HIDC holds an instrument free from all defenses except the "real" defenses enumerated in N.Y.U.C.C. § 3–305, which include, *inter alia,* infancy, incapacity, duress, and illegality of the transaction.

corporate capacity, the FDIC is obligated to protect the depositors of a failed bank, while the FDIC as receiver must also protect the bank's creditors and shareholders. In both cases, the holder in due course doctrine enables the FDIC to efficiently and effectively fulfill its·role, thus minimizing the harm to depositors, creditors, and shareholders. : .. We conclude that the FDIC enjoys holder in due course status as a matter of federal common law whether it is acting in its corporate or its receivership capacity.

*Id.* at 1249 (citations omitted). As to the second objection, the *Campbell* court ruled that, in order to promote the uniformity of federal law, "the FDIC and subsequent note holders enjoy holder in due course status whether or not they satisfy the technical requirements of state law," in order to promote uniformity of federal law. *Id.* Thus, the *Campbell* court rejected the note makers' claim that HIDC status was inapplicable to the FDIC as receiver. The Eight Circuit has ruled similarly, stating that "the federal law is evolving toward the view that FSLIC as receiver enjoys the status of a holder in due course regardless of the manner in which it acquires notes and comparable instruments." *Firstsouth, F.A. v. Aqua Const., Inc.,* 858 F.2d 441, 443 (8th Cir.1988).

Additionally, the *Wood* court, although it chose not to rule on the question, noted that

> When an insured bank goes into receivership, the FDIC in most cases will in fact be a good-faith holder of its notes. If the FDIC had no knowledge, prior to receivership, of defenses to the notes, and if it otherwise acted in good faith, it cannot be said that the FDIC is not innocent. If it is true that the state's bright-line requirements prevent the FDIC from being a holder in due course, then it is inappropriate to apply those requirements to a government agency crucial to the existence of the modern banking system when they are without purpose.

> If we considered the FDIC to be a holder other than in due course and applied state law, makers of notes would get an unjustified windfall.

*Wood,* 758 F.2d at 160. That analysis restates *Gunter*'s assessment that the extension of HIDC status to the FDIC does not unduly upset commercial expectations. As the *Gunter* court pointed out, had the bank in that case not failed, any good faith transferee would have taken the note as a holder in due course, free from any fraud claims. *Gunter,* 674 F.2d at 872. Since the Gunters could have had no other expectation, they were "in no worse position under a federal rule protecting the FDIC than they would have been" had the note been transferred in the ordinary course of business. *Id.*

By contrast, the First Circuit has ruled that "none of the policy considerations that originally prompted the adoption of a federal holder in due course rule are present when ... the FDIC as receiver is seeking only to enforce an obligation in a liquidation." *604 Columbus Ave.,* 968 F.2d at 1352. The *604 Columbus Ave.* court reasoned that because there is no similar need for a speedy evaluation in the receivership context, to confer HIDC status upon the FDIC as receiver would improperly broaden an already extraordinary remedy. *Id.* at 1352–53. Thus the First Circuit declined to expand the HIDC doctrine:

> the federal holder in due course doctrine was fashioned precisely for the purpose of expediting the purchase and assumption transaction.... It was never intended as a panacea intended to relieve the FDIC of all the "difficulties" arising from state law defenses and counterclaims during the liquidation of assets.

*Id.* at 1353.

■ As noted above, the Second Circuit has not yet addressed this question. Among the district courts faced with the issue, several were not required to decide the matter, and thus chose to avoid ruling without definitive guidance from the circuit court. *See, e.g., Fortunoff v. Triad Land Associates,* 906 F.Supp. 107, 114 (E.D.N.Y.1995); *In re Woodstone Limited Partnership,* 149 B.R. 294, 296 n. 2 (E.D.N.Y.1993); *Community National Bank and Trust Co. v. DDJA Realty Associates,* 1992 WL 135234 (E.D.N.Y.); *FDIC v. Chuang,* 690 F.Supp. 192, 198 n. 6 (S.D.N.Y.1988).

Two district courts of this circuit have faced the question and favored conferring HIDC status on the FDIC in its receivership capacity. *FDIC v. Vernon Real Estate Investments, Ltd.,* 798 F.Supp. 1009 (S.D.N.Y. 1992); *FDIC v. Armstrong Mall Associates Ltd. Partnership,* 1992 WL 175518 (D.Conn. 1992). Unfortunately, these rulings were not explained in detail. The *Vernon* court stated that *Campbell* was "persuasively reasoned," but it then declined to extend HIDC status to the FDIC because the defenses raised by the defendants were not personal defenses. 798 F.Supp. at 1016. The *Armstrong* court responded to the FDIC's request for HIDC status as a receiver by stating that "although no court in this circuit nor in the Connecticut state court system has held this to be true, there is persuasive authority for this proposition in the law of other circuits." 1992 WL 175518 at *3. The *Armstrong* court then concluded that "the court assumes, without deciding, that the FDIC is entitled to the defenses attendant to holder in due course status, ..." and then ruled that the HIDC status was still insufficient to mandate dismissal of the proposed defenses. *Id.*

A bankruptcy court in this circuit has held otherwise, again with limited explanation. *In re Kanterman,* 97 B.R. 768 (Bankr. S.D.N.Y.1989). It stated only that in a case involving the FDIC as receiver, "the rule precluding all defenses except those assertable against a holder in due course, as adopted by the Fifth, Sixth and Eleventh Circuits, does not, by its own terms, apply."

In this case, the issue of whether or not HIDC status should be conferred upon the FDIC as receiver cannot be avoided. A holding extending HIDC status to the FDIC as receiver will bar all of Wrapwell's personal defenses and require summary judgment for the plaintiff as against Wrapwell; a holding otherwise will mandate a denial of summary judgment, since a triable issue of fact exists as to one of Wrapwell's defenses. *See infra.*

The strongest objection to extending holder in due course status to the FDIC as receiver seems to be the absence of the time pressures relied upon in *Gunter* to justify HIDC status in the purchase and assumption context. Yet, although I understand that the FDIC does not need to make "overnight decisions" with "extraordinary speed" when acting as a receiver, *Gunter,* 674 F.2d at 869, this difference is not a convincing basis for denying the FDIC HIDC status in the receivership context. Although the *Gunter* court was careful to circumscribe its ruling to the FDIC in its corporate capacity, I see no reason to maintain that dividing line.

The cases cited above all emphasize that the efficient and effective functioning of the FDIC is a primary goal underlying their rulings. As the *Gunter* court explained, "if the FDIC's right to collect on returned assets, however, were subject to fraud claims of which the FDIC lacked knowledge, estimating its potential loss from a purchase and assumption would be impossible." *Id.* at 870. That the demands of efficiency are more compelling in the purchase and assumption context than in the receivership context does not, however, erase the fact that inefficiency in the receivership context is also an evil to be combatted. The FDIC as receiver must still be able to assess the value of the bank's remaining assets, and that value is directly affected by the ease or difficulty the FDIC faces in calling in the debts owed to it.

An important underlying justification for the holder in due course rule is to maximize the liquidity of negotiable instruments by protecting good faith purchasers from defenses of which they have no notice. In this context, the FDIC is just such an entity. It cannot possibly have notice of the personal defenses to promissory notes held by banks for which it becomes a receiver. Whereas it would run counter to the goals of the HIDC doctrine to confer the exceptional HIDC protections on one who might be aware of the defenses to a note and yet seek to take advantage of HIDC status, an extension to the FDIC as receiver poses no such threat. And in the absence of this danger, there is no reason to mitigate the overall liquidity of negotiable instruments by denying HIDC protections to one who holds them in good faith.

Additionally, there is no reason to guarantee a windfall to a note maker whose note happens to end up in FDIC's hands. *See Wood,* 758 F.2d at 160. A note maker oper-

ates with the expectation that whoever takes the note for value and in good faith will hold it protected from all but real defenses. It strikes me as unlikely that note makers include in their expectations the hope that, should the bank fail and be taken into receivership by the FDIC, their personal defenses will suddenly be viable. Thus, to extend HIDC status to the FDIC would not unfairly undermine any commercial expectations; rather, it would preserve existing ones.

I conclude, therefore, that there is no convincing reason to deny HIDC status to the FDIC acting as receiver, and that there are tenable reasons in support of so doing. I therefore hold that the FDIC, acting as receiver, is a holder in due course for the purposes of this action, and that defendant Wrapwell's defenses are therefore barred.

### 3. *Waiver*

Plaintiff opposes the other defendants' U.C.C. defenses on the ground that they are barred by waiver. Should my finding that the FDIC as receiver is a holder in due course be overruled by the court of appeals, this section will apply to Wrapwell's assertion of these defenses as well.

The defendants signed numerous waiver provisions in the Credit Agreement, the unlimited guarantees, the limited guarantees, and the 1992 Letter Agreements. To quote just a few:

> no ... circumstances which might constitute a defense available to a guarantor in respect of a guaranty, shall affect, impair or be a defense to this guaranty, and this guaranty is an absolute and unconditional primary obligation of the undersigned.

W–S Aff., Exhs. F, G, H (unlimited guarantees). Both types of guarantees further added that

> the Bank may at any time and from time to time ... without the consent of, or notice to, the undersigned, without incurring responsibility to the undersigned, without impairing or releasing the obligations of the undersigned hereunder, upon or without any terms or conditions and in whole or in part: ...
>
> (2) sell, exchange, release, surrender, realize upon or otherwise deal with in any

manner and in any order any property by whomsoever at any time pledged ... to secure ... the liabilities hereby guaranteed ...;

> (3) exercise or refrain from exercising any rights against the Borrower or others (including the undersigned) or otherwise act or refrain from acting....

W–S Aff., Exhs. F, G, H (unlimited guarantees); I, J (limited guarantees). The parties' Security Agreement included language guaranteeing that

> no ... failure by the Bank to insure or protect any security nor any other dealing (or failure to deal) with any security by the Bank, shall impair or release the obligations of the undersigned hereunder.

Yourick Aff., Exh. E at ¶4 (Security Agreement). The FDIC argues, unsurprisingly, that these statements and promises individually and collectively waive any and all defenses possibly available to the defendants.

I will consider waiver of each U.C.C. defense in turn.

#### (i) *§ 9–207*

As noted above, § 9–207 requires a secured party to take reasonable care of collateral "in his possession." Defendants have alleged, however, that FNY and the FDIC were remiss in failing to make adequate efforts to collect Wrapwell's accounts receivable. They have made no allegation that FNY wasted or ignored those accounts once received. Section 9–207 is thus inapplicable to this case, because the collateral was never in plaintiff's possession. Summary judgement is therefore granted as to defendants' § 9–207 defense.

#### (ii) *§ 9–504*

Plaintiff's claim that defendants have waived their § 9–504 defense raises more difficult questions. The Second Circuit recently considered the question of whether the U.C.C. allows a guarantor to waive the defense of commercially unreasonable behavior. *Bank of China v. Chan*, 937 F.2d 780 (2d Cir.1991). In *Bank of China*, the Bank asserted that Chan, a guarantor, had waived this defense when he signed an unconditional personal guaranty; Chan responded that a

debtor cannot waive the obligation imposed by § 9–504, since § 9–501(3) provides that

> to the extent that they give rights to the debtor and impose duties on the secured party, the rules stated in the sections and subsections referred to below may not be waived or varied . . . :
>
> subsection (3) of Section 9–504 . . . which deal[s] with disposition of collateral. . . .

N.Y.U.C.C. § 9–501(3). *Bank of China*, 937 F.2d at 784.

The *Bank of China* court examined New York precedent on the question of waiver of the duty of commercial reasonableness, noting that New York State appellate division courts were split in their holdings. *Id.* at 784–86, citing *Executive Bank of Ft. Lauderdale v. Tighe*, 54 N.Y.2d 330, 445 N.Y.S.2d 425, 429 N.E.2d 1054 (1981); *First City Div. of Chase Lincoln First Bank, N.A. v. Vitale*, 123 A.D.2d 207, 510 N.Y.S.2d 766 (3 Dept. 1987); *Marine Midland Bank, N.A. v. Kristin International Ltd.*, 141 A.D.2d 259, 534 N.Y.S.2d 612 (4 Dept.1988); *Marine Midland Bank, N.A. v. CMR Industries*, 159 A.D.2d 94, 559 N.Y.S.2d 892 (2 Dept.1990). Having considered the matter, the Second Circuit ruled that "were the New York Court of Appeals to address this question, we think it would hold that a guarantor may *not* waive the defense of commercial unreasonableness under the New York Uniform Commercial Code." *Id.* at 785 (emphasis in original). The court further explained that

> Article 9's definition of "debtor" is written broadly enough to include those who owe payment even if they have no rights in the collateral. Guarantors fall easily within this definition, and nothing in Article 9 suggests that its drafters meant to exclude guarantors from its safeguards.
>
> We agree with [the New York appellate division court in] *Kristin* that it would be odd indeed if the Code allowed a creditor to avoid the protection established for debtors merely by taking the readily available step of forcing the debtor's principals to sign personal guarantees. In sum, the weight and trend of New York law holds a guarantor may not waive the defense of commercial reasonableness. As a conse-

quence, any waiver in the guaranty executed by Chan is null and void.

*Id.* at 786. The Court then proceeded to consider whether there was a triable issue of fact about whether the Bank of China had acted commercially reasonably.

*Bank of China* seems to resolve the matter definitively for the defendants. The Second Circuit ruled broadly against waiver, explicitly including "those who owe payment even if they have no rights in the collateral." *Id.* Nonetheless, the FDIC argues that "only obligors who have a right of recourse against the collateral or a claim for contribution or reimbursement may assert rights under U.C.C. § 9–504," Plaintiff's Reply Memorandum of Law in 93 Civ. 859 ("PRM₁") at 18, citing *American Express International Banking Corp. v. Sabet*, 512 F.Supp. 463 (S.D.N.Y.1980). The *Sabet* court ruled that extending the provisions of § 9–504 "to cover a party whose obligations are wholly independent from those of the pledgor providing the collateral at issue, and who has no right of recourse against the collateral . . . makes little commercial sense." *Sabet*, 512 F.Supp. at 471. Although *Bank of China* made no mention of *Sabet* and does not explicitly overrule it, I do not think *Sabet* survives the *Bank of China* ruling as to § 9–504. Whereas *Sabet* has continued significance in the context of § 3–606, as discussed below, it has been effectively overruled by *Bank of China* as to § 9–504 waivers. I hold, therefore, that defendants cannot, and therefore did not, waive the defense of commercial unreasonableness under § 9–504.

### (iii) *§ 3–606*

█ Plaintiff is correct, however, in claiming that the defendants waived their third U.C.C. defense, based on § 3–606. Section 3–606 discharges a party to a negotiable instrument if the instrument's holder "unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

Numerous New York courts have held that a party to a negotiable instrument may waive its unjustifiable impairment defense. *Executive Bank of Ft. Lauderdale v. Tighe*, 54 N.Y.2d 330, 445 N.Y.S.2d 425, 428, 429

N.E.2d 1054, 1056–57 (1981) ("a guarantor may consent to impairment of collateral and ... such consent 'operates as a waiver of the consenting party's right to claim his own discharge.' "); *Chemical Bank v. PIC Motors Corp.,* 87 A.D.2d 447, 452 N.Y.S.2d 41, 45 (1 Dept.1982) ("A surety may waive any obligation upon the part of a creditor, including the obligation of the creditor not to impair the security."); *Sabet,* 512 F.Supp. at 469–70 (discharge appropriate only where party entitled to look to collateral or creditor for reimbursement, subrogation).

■ Defendants assert that their waiver of § 3–606 is trumped by the U.C.C.'s overarching rule that "obligations of good faith, diligence, reasonableness and care ... may not be disclaimed by agreement." Defendants' Memorandum of Law in 94 Civ. 5574 ("DM₂") at 10, *quoting* N.Y.U.C.C. § 1–102(3). This argument fails because defendants cannot invoke a general rule to satisfy § 3–606's requirement that the aggrieved party have preserved a right of recourse. In this case, all recourse was waived, and defendants cannot rely upon § 3–606 in their defense. Summary judgment is granted for the FDIC as to defendants' § 3–606 defense.

#### 4. *Merits*

■ Plaintiff's final objection to defendants' U.C.C. defenses is on the merits of the remaining defense. The defendants assert that plaintiff behaved in a commercially unreasonable manner by failing to collect the accounts receivable owed to Wrapwell. According to the defendants, FNY

> took no steps whatsoever to fulfill its duty to collect these accounts. No requests were ever made for assistance from Wrapwell by the Bank to collect. Not one collection action was commenced, not even a single follow up letter or call to customers appears to have been performed, by the Bank during this period.

> Major accounts ... apparently were never pursued, and remain unpaid to this day....

> The FDIC cannot point to any follow-up efforts whatsoever made by the bank to collect on these accounts after the initial notice to customers sent out in late June

and early July, 1992. The documents attached to the FDIC's papers show nothing done by the bank and only some minimal telephone conversations, which do not even appear to have been initiated by the FDIC....

Silberstein Aff.₂ ¶¶ 17–18, ¶ 33.

The FDIC responds that FNY and the FDIC "made extensive efforts to collect on the receivables." PRM₁ at 10–11. As evidence of its efforts, Plaintiff places in the record several letters, telephone message notes, and faxes which demonstrate its collection efforts.

■ This matter cannot be resolved on summary judgment: it presents a straightforward dispute about crucial facts underlying defendants' sole remaining defense to plaintiff's suit. Although summary judgment is generally appropriate in the context of an action on a promissory note, it is not appropriate where a dispute such as this exists. *Royal Bank of Canada v. Mahrle,* 818 F.Supp. 60 (S.D.N.Y.1993).

■ Plaintiff's summary judgment motion is not entirely in vain as to the § 9–504 defense, however. Defendants' § 9–504 commercial reasonableness defense may affect the amount they owe on the notes, but it does not alter the underlying question of their liability on the notes. As the Second Circuit noted in *Bank of China,* in explanation of their partial remand of the case,

> Despite the triable issue of fact as to the Bank's commercial reasonableness in handling the letters of credit, such does not deprive the Bank's right to summary judgment respecting liability.... Hence, the presence of commercially unreasonable disposal of the collateral does not relieve Chan of his obligation on his guaranty, but only affects the amount of damages the Bank may collect on Chan's guaranty.

937 F.2d at 787–88. *See Chrysler Credit Corp. v. Mitchell,* 94 A.D.2d 971, 464 N.Y.S.2d 96, 97 (4 Dept.1983) (failure to comply with § 9–504 did not deprive plaintiff of right to summary judgment); *S.M. Flickinger Co., Inc. v. 18 Genesee Corp.,* 71 A.D.2d 382, 423 N.Y.S.2d 73, 76 (4 Dept.1979)

(same); *Stanchi v. Kemp,* 48 A.D.2d 973, 370 N.Y.S.2d 26 (3 Dept.1975) (failure of plaintiff to comply with § 9–504 would not discharge defendants from all liability under contract).

In sum, therefore, I hold that all of Wrapwell's defenses fail because the FDIC is a holder in due course whose rights cannot be defeated by personal defenses of any kind. I grant plaintiff's motion for summary judgment as to defendant Wrapwell, and hold Wrapwell liable for the full amount of the promissory notes. I dismiss the other defendants' § 3–606 and § 9–207 defenses, but preserve their § 9–504 defense as presenting a genuine issue of material fact on the question of damages. Thus I grant plaintiff's summary judgment motion as to these other defendants' liability on the notes, but deny the motion as to the amount of damages owed by them to the FDIC.

### B. *Defendants' Contract Defenses*

The defendants have also alleged that FNY breached its contract with them, and breached the covenant of good faith and fair dealing implicit in that contract. The breach claims rest primarily upon alleged violations of unwritten agreements between the parties. The defendants rely upon Louis Silberstein's affidavits, in which he asserts that

> Based on an understanding with the bank, payment of all sums due in 1990 was made at one time in December 1990, notwithstanding the [note's] installment schedules, owing to the seasonal nature of the Defendant's business.

> Similarly, all payment made toward amounts owed in 1991 was made at one time in December 1991 for the same reason.

> In April 1992, the bank departed from this custom and practice and demanded immediate payment of all outstanding amounts.

Silberstein Aff.[1] at ¶ 5–8. In his second affidavit, Silberstein alleged that FNY's behavior in April 1992 deviated from the practice that "had always been extended as a matter of course." Silberstein Aff.[2] at ¶ 10.

Defendants are effectively arguing that by demanding payment in April 1992, and by taking steps to collect that payment from Wrapwell's customers, FNY departed from a custom and practice developed between the parties based on their "understanding" that payments would be made in December, which departure breached the parties' contract. This "understanding" was never recorded, and it expressly conflicts with the payment schemes unambiguously outlined in Notes A, B, C, D, and E.

In 1942, the Supreme Court ruled in *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), that a secret agreement between a debtor and a bank cannot be enforced against the FDIC. According to the Second Circuit, the *D'Oench, Duhme* doctrine was codified at 12 U.S.C. § 1823(e), which reads:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it ... shall be valid against the Corporation unless such agreement—

> (1) is in writing,

> (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

> (3) was approved by the board of directors of the depository institution or its loan committee, ... and

> (4) has been, continuously, from the time of its execution, an official record of the depository institution.

*FDIC v. Suna Associates, Inc.,* 80 F.3d 681, 684, (2d Cir.1996). The Second Circuit explained that § 1823 extends the *D'Oench, Duhme* doctrine to apply beyond secret agreements to any unwritten agreement, barring "parol evidence from altering the rights and obligations of the parties to any notes or other documents of insured institutions that pertain to assets acquired by the FDIC." *Suna Associates* at 685. *Suna Associates* explicitly included guarantees among those assets. *Id.* at 684, citing *FDIC v. Bernstein,* 944 F.2d 101, 108 (2d Cir.1991). Although it affirmed the importance of parol evidence in interpreting genuinely ambiguous

contract language, the *Suna Associates* court then barred from evidence an alleged agreement as to a note's interest rate because "the language of both the note and the accompanying guaranty was unambiguous." *Suna Associates* at 686.

The parties in the case at bar are bound by equally unambiguous documents. Regardless of what defendants allege was "understood" by the parties, and regardless of any "custom and practice" followed by them, promissory Notes C and D were unambiguously due on April 30, 1992. By failing to pay those notes, defendants triggered the default provisions of Notes A and B, on which money was also owed. Pursuant to the *D'Oench, Duhme* doctrine, as recently reiterated by the Second Circuit, any of defendants' defenses based on unwritten agreements as to the true meaning of those notes and guarantees are barred. I therefore dismiss defendants' contract defenses to plaintiff's motion for summary judgment and grant summary judgment for the plaintiff as to those defenses.

### 3. *Attorneys' Fees*

■ Each of the five promissory notes contained a provision requiring the Borrower to reimburse FNY for any reasonable attorneys' fees incurred by it in enforcing the notes, as does each of the guarantees. Such provisions are enforceable under New York law. *Seward & Kissel v. Smith Wilson Co., Inc.*, 814 F.Supp. 370 (S.D.N.Y.1993); *Torres & Leonard, P.C. v. Select Professional Realties, Ltd.*, 118 A.D.2d 467, 499 N.Y.S.2d 707, 709 (1 Dept.1986). I therefore hold defendants liable for all reasonable attorneys' fees associated with this action.

### 4. *Additional Rulings*

Defendants first affirmative defense in 94 Civ. 5574 asserts that the action is barred because the notes are the subject of a prior pending action. This defense is dismissed as incorrect: the second consolidated action applies only to Note E, signed in October 1992. The prior action, 93 Civ. 859, makes no claim as to Note E.

Defendants' fifth affirmative defense of laches is also dismissed.

### *CONCLUSION*

Plaintiff's Rule 25(c) motion for substitution is granted. Plaintiff's motion for summary judgment is granted as to Defendant Wrapwell Corporation and as to all defendants' contract defenses. Plaintiff's summary judgment motion is granted as to the remaining defendants' liability on the notes, but denied as to their U.C.C. § 9–504 commercial reasonableness defense, as described above. Plaintiff's motion for attorneys' fees is granted.

Counsel for the parties are directed to attend a status conference in Room 17C, 500 Pearl Street, at 2:00 p.m. on May 31, 1996.

It is SO ORDERED.